## Maria Chaffee v. Amos Chaffee.

*Divorce a mensa et thoro: Alimony.* The principles which should determine whether alimony should be allowed when a divorce *a mensa et thoro* is applied for and denied, discussed, but not decided; the court being equally divided.

*Heard November 1st, 2d, 3d, 1866. Decided January 14th.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed by complainant for a divorce *a mensa et thoro*, and for alimony.

The cause was heard in the court below on the pleadings and proofs, and the bill was dismissed.

The complainant appealed.

*Levi Bishop* and *G. V. N. Lothrop*, for complainant.

*D. C. Holbrook* and *S. T. Douglass*, for defendant.

CHAFFEE v. CHAFFEE.

CHRISTIANCY J.

The bill was filed for a divorce *a mensa et thoro*, and for alimony, or a reasonable support and maintenance for complainant and her daughter Lizzie, a young lady about twenty-two years of age, alleged to be an invalid, unable to support herself, and compelled by the defendant to leave her home.

The case was heard in the court below upon pleadings and proofs, and the bill being dismissed, the case comes to this court upon appeal. A preliminary objection is taken by the defendant, that the bill does not make a case warranting the relief prayed. As we are all of opinion that the case made by the bill *and sustained* by the proof does not warrant a decree for the divorce prayed for, the objection to the sufficiency of the bill is only important so far as relates to the question of support and maintenance. The statute — *Comp. L.* § 3263 — provides, "In case of an application for a divorce from bed and board, although a decree for such divorce be not made, the court may make such order or decree for the support and maintenance of the wife and children, or any of them, by the husband, or out of his property, as the nature of the case may render suitable and proper." The denial of the divorce, therefore, does not of itself dispose of the case, and the court are bound to examine the evidence and consider the circumstances of the case with reference to the question whether a support and maintenance should not be ordered, notwithstanding the divorce is denied. This allowance for support and maintenance without a decree of divorce, is not a new feature found for the first time in this statute; it comes precisely within the original definition of alimony in the English law, which did not extend to cases of divorce, but was confined to cases where the wife lived separate without a divorce. — *See Bishop on M. & Divorce, book 5, chap. 19, §§ 350 and 351, and cases there cited.*

15 MICH. — N.

CHAFFEE v. CHAFFEE.

But this allowance can only be made under this statute in case of an "application for a divorce from bed and board." This must be such an "application" as is contemplated by the statute, and that is a proper bill for a divorce. The bill should, therefore, be one which, if sustained by proof, would warrant a decree for divorce from bed and board. In this view, and this only, the sufficiency of the bill becomes important in the present case.

There are but two grounds upon which it is or can be claimed that the bill makes a case for a divorce. First, cruelty to the wife; and, second, that the husband being of sufficient ability, has grossly or wantonly and cruelly refused or neglected to provide her a suitable maintenance.

The bill does not expressly charge cruelty to the wife, though it does charge "that for several years past the defendant has been exceedingly morose, irritable, captious, quarrelsome, abusive and tyrannical in his family; treating his children with great harshness, and sometimes with unnecessary violence, thus rendering his home and that of complainant exceedingly uncomfortable and unpleasant, as well for her and the family as for himself;" that during a severe and dangerous fit of sickness of their daughter Lizzie, he treated her with unkindness and harshness, and showed a determination either to turn her out of his house or to break up housekeeping, so as to deprive her of a home and its comforts. It also alleges that his temper has become so soured that he seems to hate all his children, and complainant with them; that he has frequently ordered them out of the house, and put them out by violence. (This last allegation is not claimed to apply to the wife, though from the context it might be so construed.)

Now, I do not wish to be understood to say that cruelty to children might not be carried to such an extent as to constitute cruelty to the wife, especially under

our statute, which does not, like the English decisions, restrict the definition to acts of personal violence to the wife, or bodily harm actually inflicted or reasonably apprehended — a definition which, like some other relics of barbarism in the English law, ignores the human soul, with all its susceptibilities of suffering tortures more intense than physical pain, and more certainly destructive of health and life. — *See Evans v. Evans,* (1 *Hag. Con.* 35) 4 *Eng. Ec.* 310, 312; *Lockwood v. Lockwood,* (2 *Curt. Ec.* 281) 7 *Eng. Ec.* 114, 115; 1 *Bishop M. & Div.* §§ 715 *to* 733; *Rice v. Rice,* 6 *Ind.* 105. And while I fully admit that the objection to the bill in this stage of the case is not to be treated with the same favor as if made by demurrer, yet I am inclined to think the allegation of cruelty as respects the wife is not sufficient to sustain the bill on this ground. But I think this point immaterial, because the bill is clearly sufficient on the second ground, of cruelty and wantonly neglecting and refusing to provide a suitable maintenance. His ability to do this is distinctly alleged, and that he was worth from $75,000 to $100,000; that he had a comfortable residence in the city of Detroit, reasonably well furnished, where he had lived for years; it also substantially charges that defendant had, without any fault on her part, and without just cause or excuse, turned her off and refused to allow her to live with him; that he peremptorily ordered her to quit the house, and go and board elsewhere; that she did leave, in obedience to this order, taking with her such of the furniture as he permitted her to take, but, for sufficient reasons which she states, instead of going to board, that she hired a house, removed into it, etc., he remaining alone in his residence; that they have not since lived together, and that he has been requested to furnish her a support, but he has wantonly and cruelly neglected and refused so to do.

It is claimed by the defense that the allegations of the

bill on this .point amount only to a charge that he deter-
mined to break up housekeeping, and ordered her to leave
and go ·and board *with him* in some other place.    I do
not find anything iń the bill to warrant this construction.

Having thus driven her from him, and from her house,
it was his clear duty to provide for her a sufficient sup-
port and maintenance, and his neglect or refusal to do so
was, under the circumstances stated in the bill, both wan-
ton and cruel.

The bill, therefore, sets forth sufficient ground for the
divorce, if sustained by the evidence.

But the evidence does not sustain the bill, especially in
reference to the charge that she was driven from him or
her home by his peremptory order and against her will;
and that she left solely in consequence of such order.    This
is the main ground upon which the divorce is claimed by
the bill.    Nor, if the bill could be held sufficient on the
ground of cruelty, do we think the evidence shows a state
of facts which, under all the circumstances of the case,
would authorize a divorce on that ground alone.    In fact
the defendant so far from using any violence or threats
against complainant is not shown to have used toward
her any harsh language; but he was severe to his
children, and had driven off two of them; one son and
one daughter, and forbidden them to return; he had also
intimated an intention of expelling a third, the last daugh-
ter who remained at home.    The mother was warmly at-
tached to the expelled children and to all her other chil-
dren, and they were equally attached to her.    She wiśhed
the children to be allowed to visit her, and felt the need
of their society.    The husband was displeased at this.    It
was a matter which weighed heavily upon the mother's
mind, and in some measure affected her health.    The father,
by nature of a severe and gloomy cast of mind, with little
inclination to conversation, and little conversational power,
jealous of his marital and parental authority; requiring

most implicit obedience, firm even to obstinacy, never allowing himself to be questioned; with none of that delicacy of sentiment or of attention calculated to make him sympathize with her feelings or sufferings — was for some years before the separation in ill health, of a dyspeptic habit, and becoming more nervous, irritable, and gloomy — brooding over fancied wrongs, and less and less fitted to enjoy life himself, or to render himself in any respect agreeable to his wife and family. The difficulty in respect to the children had produced a state of ill feeling between the husband and wife, and great mental suffering on her part. She had always been obedient and respectful to him, never using an unkind word. But this state of feeling continuing to grow worse, both parties, it seems, had for some time been thinking of a separation, or at least he had for some time contemplated breaking up house keeping and having her go and board at a public hotel or boarding house; whether he intended to board with her is quite problematical. And she on her part, though opposed to boarding out, was desirous of separating from him and keeping house with her daughter, where her other children, driven away by the husband, might visit her and make it their home.

And without going into a detail of the evidence, after a careful examination of it I am entirely satisfied that the separation finally took place by mutual consent; she, with his full concurrence, taking a large part of the furniture, and he assisting in the removal of a part of it; she going to keep house with her daughter, and he, remaining at his own house and residing alone. And without, here, intimating an opinion which party was most to blame for the separation, I am satisfied from the evidence that the parties could not longer have continued to live and cohabit together with any such degree of harmony as to render such cohabitation desirable. And that now after what has occurred, and this long, not to say, bitter litigation in which all the members of the family have been involved, there

can be no reasonable hope of such reconciliation as would render it desirable to attempt again to live together.

For these reasons I think it better for the welfare of both, and of the family in general that the parties should continue to live separate.

Under these circumstances and the separation having been by mutual consent the husband is bound, I think, to furnish the wife a support and maintenance to enable her to keep a separate establishment — that being necessary to her comfort — and to enable her to live in a style corresponding with the station in society to which they had attained, and in due proportion to his means.

He has refused to furnish her any support, and she has been compelled to rely for her support upon the liberality of her two sons, who have, much to their credit, supplied her wants and those of her daughter from their own earnings: she having no property of her own. This the defendant admits it is not reasonable the sons should be required to do. The evidence shows that he is amply able to furnish this support. It also shows that she has by her steady industry, frugality and privations contributed largely to the competence he has acquired, and that such support and maintenance are therefore equitably her due, as a part of the fund acquired by their joint efforts.

But the maintenance should, I think, be confined to the wife. The daughter is above the age of majority, and however desirable it might be that she should be provided for with the mother, I can discover no recognized principle upon which it can be done by a decree in this proceeding.

I see no reason for a reference to take proof and and report upon the property and means of the defendant or other circumstance affecting the amount of alimony. These matters were fully and specifically set forth in the bill, and distinctly put in issue, by the answer, and the

proof taken is before us. (*See* 2 *Bish. Mar. and Div.* § 495.).

The bill alleges his property to be worth from $75,000 to $100,000, and his annual income to be $4,000 or $5,000. The answer states his property to be worth only from $30,000 to $35,000, and his income varying from $770 to $1,441 per year. Complainant's testimony shows his property to be worth from $60,000 to $75,000, and his annual income nearly $3,000.

The defendant has offered no evidence upon the point. From the best estimate I have been able to make from the evidence I think one thousand dollars per year a reasonable allowance for her support and maintenance, taking into consideration the condition in life of the parties, and his ability.

The defendant among the other costs was, by this court, (14 *Mich.* 463,) ordered to pay the costs of making and printing the return; subject however to the final determination of this court upon the hearing, whether the same or part of the same should not be returned on account of the unreasonable length of the record arising from the great amount of irrelevant testimony introduced by complainant. And being now satisfied that the record was increased one-half by such irrelevant testimony and that induced by it, I think one-half the cost of making and printing the record must be paid by the complainant, or at her option deducted from the first installment of alimony under this decree. Such alimony should be paid quarterly in advance.

The decree of the court below dismissing the bill should be reversed so far as relates to alimony, and a decree entered in this court in accordance with the conclusions above stated.

COOLEY J. concurred.

CHAFFEE *v.* CHAFFEE.

CAMPBELL J.

I think with my brethren that no ground exists for a decree of divorce in this case.

Nor do I think it a proper case for alimony. Without stopping to inquire whether the bill was maintainable on its face, I think the court should never allow alimony in the absence of a divorce, unless upon a very strong case of fault which should not fall short of gross and wanton misconduct. I feel very sensible of the extremely unfortunate condition of this family, but it is not owing to any desire to oppress or injure the wife. And I am not willing to establish a precedent which will tend in any degree to lessen the obligation of mutual forbearance between those who are joined for better and for worse. It is not contended that the separation was involuntary on the part of the wife, and while I can not but see that this litigation has made an unfortunate state of things still more difficult, yet I do not think defendant should suffer for any such consequences. No such family difficulty ought to be beyond reconciliation; but if it should continue so, I do not think that justice would be subserved by compelling defendant to bear the consequences of the household division, under the decree of a court charging such a responsibility upon him.

I fully agree that a more sorrowful state of affairs is not often brought before a court, but I believe that the policy of justice will be best subserved by leaving the parties to make such arrangements for the future as a proper sense of their past relations and calm reflection should dictate to both of them.

MARTIN Ch. J. concurred.

The court being equally divided, the judgment of the court below was affirmed.