WILLIAM PURVIS, JOHN PURVIS, AND WILLIAM HOLDEN v. MILTON H. BUTLER.

*Partnership—Liability to third parties—Joint obligation—Parties defendant.*

1. In a joint obligation, each person is bound for its entire fulfillment, and, in the absence of a plea in abatement, may be proceeded against to judgment and execution.

2. Persons entering jointly into an undertaking may be copartners, and the joint interest makes them liable whether they are partners or not.

3. The question whether a creditor who takes a share in the profits, for the use of money advanced, occupies the relation of creditor or partner, must be determined by the agreement of the parties, as between themselves, and, as to third persons who deal with them, must be measured by their rights.

4. Parties who have advanced money for the prosecution of a business, and agree to make further advances, and to receive

interest on the indebtedness thus created, and also to receive and apply the profits in its liquidation, succeed to the entire proprietorship of the business, and are liable as partners to third persons upon contracts entered into in carrying on the same.

Error to Macomb.   (Canfield, J.)   Argued June 5, 1891. Decided July 28, 1891.

*Assumpsit.*   Plaintiffs bring error.   Reversed.   The facts are stated in the opinion.

*James H. McDonald,* for appellants, contended for the doctrine of the opinion.

*Charles K. Latham,* for defendant, contended:

1. A promise to pay the debt of another after it has been contracted must not only be in writing, but must be supported by a consideration, to take the debt out of the statute; citing *Rood v. Jones,* 1 Doug. 188; *Corkins v. Collins,* 16 Mich. 478; *Pratt v. Bates,* 40 Id. 37; *Mallory v. Gillett,* 21 N. Y. 412.

2. There is no testimony tending to show a substitution of defendant for Roberts or Gauthier; hence there was no fact of such substitution to be submitted to the jury. There being no such substitution, no novation of parties, no liability was created against defendant; citing *Welch v. Marvin,* 36 Mich. 59; *Mulcrone v. Lumber Co.,* 55 Id. 622.

3. The relations of the parties as created by the first agreement, set forth in the opinion, were not such as to make them partners as between themselves, nor was the conduct of defendant in the matter of the fishery business such as to make him a partner as to third persons; citing *Beecher v. Bush,* 45 Mich. 188.

4. This Court has effectually disposed of the question of defendant's liability under such an undertaking as the second agreement, on the ground of want of privity, in *Pipp v. Reynolds,* 20 Mich. 88; *Turner v. McCarty,* 22 Id. 265; *Hicks v. McGarry,* 38 Id. 667.

CHAMPLIN, C. J.   The plaintiffs were fishermen carrying on their business around Duck Island, where they resided.

C. W. Gauthier had, prior to 1889, been engaged in

purchasing fish of the fishermen at Duck Island and
West Selkirk, Manitoba, and Ephraim K. Roberts and
Milton H. Butler had advanced him money to a large
amount in his business, and held mortgage security upon
his property.   Carlos E. Warner also held mortgage secur-
ity upon some of Gauthier's property.   On the 8th day
of February, 1889, an agreement was entered into between
Charles W. Gauthier of the first part, Butler and Roberts
of the second part, and Warner of the third part, as fol-
lows:

" This agreement, made and entered into this 8th day
of February, A. D. 1889, between Charles W. Gauthier,
of Windsor, Ontario, of the first part, Milton H. Butler
and Ephraim K. Roberts, of Detroit, Michigan, of the
second part, and Carlos E. Warner, of the same place,
of the third part, witnesseth:

" *Whereas,* Charles W. Gauthier is the owner of an
extensive fishery business and large property, used in and
in connection therewith, at or about Detroit, Bay City,
Duck Islands, and Manitoba, and a stock of frozen fish
situated at and about the city of Detroit, in the State of
Michigan, and a stock of fish at West Selkirk, in the
province of Manitoba, Canada;

" *And Whereas,* said Milton H. Butler and Ephraim K.
Roberts have a first mortgage on a large portion of the
property of said Gauthier;

" *And Whereas,* said Warner has mortgages and deeds
covering a large portion of said property, real and chat-
tel;

" *And Whereas,* said Gauthier is in default on each of
said mortgages, and the mortgagees therein have a right,
by virtue of their mortgages, to take immediate posses-
sion;

" *And Whereas,* it is deemed advisable by all parties
concerned to carry on said business under an arrange-
ment which will protect their respective and several inter-
ests, with a view of paying and liquidating said indebt-
edness at the earliest possible moment:

" Now, therefore, it is agreed between said parties as
follows:

" 1. The indebtedness of the said Gauthier to the said
Milton H. Butler and Ephraim K. Roberts, which is con-

templated and covered hereby, is fixed and established at
the sum of eighty-two thousand dollars ($82,000), with
interest thereon at the rate of seven (7) per cent. per
annum. from the date thereof, which said Gauthier hereby
agrees to pay.

"2. Said Ephraim K. Roberts shall have the general
management of the said fishery business for the benefit
of all concerned in the property, and, to carry out the
purposes of this agreement, said Roberts shall have author-
ity to make all contracts of importance connected with
said business, either in the name of said Gauthier or in
his own name, as he shall deem best. He shall have
entire and sole control of the finances of the said bus-
iness, including the sale and disposition of all products
of said business, and the handling of all money that goes
into or is made from said business, except as is herein-
after stated: *Provided*, however, that he, the said Rob-
erts, shall keep correct and accurate books of account of
said business, in which all the details and transactions of
said business shall be fully and plainly entered. Said
Gauthier and Butler, or his or their agents and servants,
shall at all times have free access thereto, with full
authority to examine, inspect, and copy from, at any and
all reasonable times, without let or hindrance.

"3. Said Warner shall also act as trustee in conjunc-
tion with said Roberts, and shall at all times have free
access to said business, and to the books of account and
details of the same, with full authority, either by him-
self or under his direction, to examine, inspect, and copy
from said books of account, at any and all reasonable
times, without let or hindrance; and in case a difference
of opinion shall arise between said Gauthier and said
Roberts in reference to said business, and in carrying on
and conducting the same, then said Warner shall be con-
sulted in reference thereto, and shall have an equal voice
with said Roberts in reference to any course or policy to
be pursued; it being understood, however, that the con-
duct and management of said business in the main shall
rest with and be vested in said Roberts. He shall devote
his entire time and attention to the same.

"4. Said Gauthier shall have the general charge of the
fishery business, and shall give his attention in the main
to matters outside of the office, subject, however, to the
approval of said Roberts in all matters of importance.

"5. Said Roberts and said Gauthier severally agree to

give to said business their undivided time and attention from and after the first day of March, 1889, until the first of March, 1893, unless this agreement is sooner terminated; and they severally agree to use their utmost diligence to make said business a success, and faithfully perform their duties in accordance with the terms of this agreement, and the general purpose thereof, to the end that the said indebtedness of the said Gauthier may and shall be as expeditiously and rapidly paid off as possible. Said Roberts and said Gauthier shall each draw from the proceeds of said business an annual salary of thirty-six hundred dollars ($3,600), payable monthly, besides legitimate expenses incurred in said business, which shall be charged to the expense account.

"6. Said Gauthier shall, as speedily as possible, dispose of the stock of fish now on hand, wherever situated, and the proceeds thereof, after deducting the expenses of said sale, shall be applied as follows:

"*First.* To the payment of the indebtedness secured by any and all the mortgages and deeds to said Warner.

"*Second.* To the payment of any indebtedness for wages now outstanding.

"And, as security for any balance of indebtedness secured by said mortgages and deeds held by said Warner, he, the said Warner, shall hold the said mortgages and deeds now held by him, and shall be at full liberty, at any and all times, to enforce the same, according to the terms and conditions of said mortgages.

"7. Said Charles W. Gauthier agrees to make, and said Milton H. Butler and Ephraim K. Roberts agree to indorse, paper sufficient to raise whatever money may be necessary to carry on said fishery business successfully; and said Gauthier agrees to give mortgages to said Butler and Roberts on all property not now mortgaged to them, and mortgaged to said Warner, for the purpose of securing said future advances; and all mortgages now held by said Butler and Roberts shall also be held and used as security for such future advances; and all proceeds, profits, and avails of said business, after the payment of the expenses, shall first be applied towards the payment and reduction of said advances.

"8. The proceeds realized from the carrying on of the said fishery business shall be applied by said Roberts as follows, and in the following order:

"*First.* In paying the expenses of said business, including all unsecured indebtedness contracted therein by said Roberts or by his authority, and any advances made for the purpose of carrying on such business.

"*Second.* In paying the interest on said indebtedness secured by said mortgages to Butler and Roberts, and upon any outstanding indebtedness, if any, secured by said mortgages and deeds to said Warner, and also interest upon the mortgages covering the 'Duck Islands,' so called, and also the interest upon the mortgage of Mary Gauthier to the Citizens' Savings Bank.

"*Third.* In paying any indebtedness now existing for wages, and also all outstanding indebtedness, in sums not exceeding two hundred dollars to distinct and several creditors, and to an extent not exceeding two thousand dollars in the aggregate.

"*Fourth.* In paying the minimum amount mentioned in the following ninth paragraph of this agreement during the respective years therein mentioned.

"*Fifth.* To pay from the residue of the proceeds of the said business the balance of the indebtedness secured by a mortgage to the Citizens' Savings Bank, executed by Mrs. Mary Gauthier, for the sum of five thousand dollars and interest.

"*Sixth.* To pay such part of the outstanding unsecured indebtedness of said Gauthier as may be settled or compromised by said Gauthier, or said Gauthier and Roberts, and as said Roberts may consider it in the interest of the business or said Gauthier to pay.

"*Seventh.* The balance to be applied as rapidly as possible in reducing the indebtedness to said Roberts and Butler hereinbefore mentioned.

"9. It is further agreed that the mortgages so held by the said Butler and Roberts shall continue existing liens during the continuance of this contract, and that such mortgages shall not be enforced so as to prevent the carrying out of this agreement, provided that the aggregate indebtedness for which said mortgages to Butler and Roberts stand as security shall be reduced five thousand dollars ($5,000) by March 1, 1890, and ten thousand dollars ($10,000) during each succeeding year, and entirely paid March 1, 1893: *Provided,* however, that the said Roberts shall devote himself to the best of his ability to reduce said mortgages as rapidly as possible: *And provided,* further, that if said indebtedness is not reduced as above provided, or if said Gauthier fails to conform in any material respect to this agreement, then, at the option of the said mortgagees, said mortgages may be enforced, and this agreement abrogated.

" 10. Said Butler and Roberts hereby agree to surrender to said Gauthier as canceled all commission notes made by said Gauthier, and now held by them, or either of them.

"11. It is further agreed that when said indebtedness shall be reduced to the sum of twenty-five thousand dollars ($25,000), then said Gauthier may, at his option, execute a mortgage to said Roberts and Butler upon the property and effects of said business for said sum, with interest at the rate of seven per cent. per annum, when the said Roberts shall surrender, retransfer to, and reinvest in the said Gauthier the management and control of said business; and the said Gauthier shall have the privilege at any time of terminating this agreement by paying the indebtedness secured by said mortgages herein mentioned, in which event said business shall be surrendered and said property turned over to him; or to any one he may designate.

" This agreement shall take immediate effect.

" In witness whereof said parties have hereunto set their hands and seals the day and year first above written.

[Signed]          " CHARLES W. GAUTHIER.
                   " M. H. BUTLER.
                   " EPHRAIM K. ROBERTS.
                   " C. E. WARNER."

Afterwards Butler succeeded to the rights of Roberts and Gauthier by the following agreement:

"This memorandum of agreement made this seventh day of January, 1890, between M. H. Butler of the first part, E. K. Roberts of the second part, and C. W. Gauthier of the third part, witnesseth:

"1. Said parties, each with the others, in consideration of the agreements hereinafter expressed, agree to and do hereby cancel the within contract, and the rights of each thereunder.

"2. Said Roberts and said Gauthier, in consideration of said Butler's agreement hereinafter expressed, hereby agree to assign and set over, and do hereby transfer, to said Butler all the fish now under their control and owned or under the control of E. K. Roberts, manager, the same being about four hundred tons at West Selkirk, Manitoba, and about two hundred tons at Sandwich,

Windsor, Chicago, and Detroit; also all and singular the property and interests in property of all kinds used by or connected with the fish business conducted by E. K. Roberts, manager; and said Roberts, for the same consideration, hereby transfers to said Butler all his rights and interests in chattel mortgages and securities of all kinds heretofore taken from said Gauthier by said Butler and said Roberts, and by each of them.

"3. Said Butler hereby agrees, in consideration of the agreement of said Roberts and said Gauthier above mentioned, to take up as indorser, as they come due, all those notes heretofore made by said Gauthier and indorsed by said Butler and said Roberts, and those made by said Roberts and indorsed by said Butler, on which notes the money has been raised to carry on said fish business, and which have been discounted at Detroit, Mount Clemens, and Ann Arbor; but, in the taking up and payment of said notes as the indorser thereof, said Butler waives no rights by reason of this agreement; and said Butler further agrees to take charge of and sell said fish as he best can, and apply the net proceeds therefrom to reimburse himself for the money paid out in taking up said notes so far as the same may go, and take charge of all other property and interests therein transferred to him, and use and dispose of the same to the best advantage of the parties hereto, in taking care of their said indebtedness. Said Butler further agrees to take care of the running expenses in connection with the disposition of said fish and said property, and the accounts and notes now payable for running expenses heretofore incurred.

"M. H. BUTLER.<br>"EPHRAIM K. ROBERTS.

"*Dated January 7*, 1890.

"I hereby assent to the above agreement, in so far as it relieves Ephraim K. Roberts from the management and conduct of the business specified therein, and also in so far as said Roberts transfers to said Butler all his rights and interests in all chattel mortgages and securities of all kinds heretofore taken from me by said Butler and said Roberts, and by each of them: *Provided,* however, that all rights and remedies under said agreement, and all claims for damages and other liabilities thereunder in my favor for any violation of said contract, if

any, by said Butler and Roberts, or either of them, shall be reserved.

"C. H. GAUTHIER.

"*Dated January* 15, 1890."

After this agreement of February 8, 1889, was entered into, Roberts went to Duck Island, and represented to plaintiffs William and John Purvis that there was a company formed by Mr. Roberts and Mr. Butler, of which he was president and manager, who were engaged in the fish business, and employed them to work for the company; and they fished and sold the fish to this company represented by Roberts, and within three months furnished them nearly $2,000 worth of fish. They received some payment, and Roberts gave his note for the balance of $961:53, dated November 2, 1889, payable in 45 days thereafter to Purvis Bros. & Co., the plaintiffs in this suit.

William Purvis, Jr., claims that he was engaged to work for this firm composed of Roberts, Butler, and others in running a fishing dock at West Selkirk, at $50 a month. This account he assigned to plaintiffs before suit brought. He testified that he saw Butler, and asked about his wages, and he expressed surprise that he had not been paid before, and said it was a shame, and he intended to pay the account inside of 30 days, and did pay him then $39, leaving a balance of $700. This was February 12, 1890. Butler also made some payments upon the note given to Purvis Bros. & Co.

At the close of the plaintiffs' testimony, the court took the case from the jury, holding that the contract entered into upon the 8th day of February, 1889, did not create a partnership, and that Butler was not liable as a partner.

It was not necessary that the partners should have all

been joined as defendants in the suit. In a joint obligation, each person is bound for its entire fulfillment, and, in the absence of a plea in abatement, may be proceeded against to judgment and execution. Persons entering jointly into an undertaking may be copartners, and the joint interest makes them liable whether they are partners or not.

In the contract under consideration the parties concerned agreed to carry on the business under an arrangement which should promote their several interests, with a view to paying and liquidating the indebtedness. The indebtedness covered by the contract to Butler and Roberts was agreed upon as $82,000. Roberts was to have the general management of the fishery business for the benefit of all concerned in the property, and, to carry out the purposes of the agreement, was to have authority to make all contracts of importance connected with the business, either in his own or Gauthier's name, as he should deem best. He had authority under this agreement to make the contracts under which the plaintiffs claim. There can be no doubt about that. Who is responsible for the contracts which the parties authorized him to make? Manifestly those for whose benefit they were made. He is clothed with entire control of the finances of the business, and all sales and disposition of the products of the business, and the handling of all money that goes into or comes from the business, except as therein stated. The exceptions are contained in the eighth clause of the contract, and under the first subdivision Roberts should have paid the note held by the plaintiffs before applying the money received to the other purposes specified; but, if he did not, the other parties to the contract are not relieved from their liability to pay as joint contractors. These purchases were made

87 MICH.—17.

under an agreement for their benefit and on their account. These contracts are as much the contracts of all the parties to the agreement as they are those of Roberts. Here was a community of interests, an enterprise in which the secured indebtedness of the second and third parties and the labor and business of the first party were embarked as capital, and the profits arising were to be shared and applied to a definite purpose. Their liability does not depend upon their intention to assume the obligation. As to third persons, individuals are often held liable as partners when, as between themselves, it is expressly agreed that they shall not be regarded or held as such. *Moore v. Davis*, 11 Ch. Div. 261; *Van Kuren v. Manufacturing Co.*, 13 N. J. Eq. 302; *Beecher v. Bush*, 45 Mich. 188.

It does not lie in the mouth of the defendant, Butler, to say:

"It is true, I agreed that Roberts should purchase the fish to supply the business, and employ help, and that I should receive the benefit of such purchases and labor, and that I also agreed that I would lend my credit still further to furnish means to carry on the business; but I am not liable for the obligation he has created for carrying it on, in which we were jointly interested."

On the contrary, it is plain that the benefit derived from the sale of the property purchased, which has been received from the plaintiffs in such a manner as to create a privity of contract between them and him, furnishes a basis of the implied contract to pay for the property so purchased. The fact that the control and management of the business was placed in the hands of Roberts does not determine that the relation of partners did not exist. It was Butler's right to have the business conducted in accordance with the agreement, although he was to take no part in its management. He had reserved the right,

which he had without its being expressed, to examine the books kept by Roberts in order to see how he was conducting the business, and to compel him to observe the terms of their contract. The fact that the business was being carried on by his agreement, and for his benefit, shows that he was a principal. *Frowde v. Williams*, 56 Law T. (N. S.) 441. And see *Leggett v. Hyde*, 58 N. Y. 272; *Cumpston v. McNair*, 1 Wend. 457; *Beecher v. Bush*, 45 Mich. 188.

The question whether a creditor who takes a share in the profits, for the use of money advanced, occupies the relation of creditor or partner, is involved in considerable perplexity. It must be determined by the agreement, as between themselves, and as to third persons must be measured by the rights which third persons have who deal with them. In the present case the parties who had advanced and who agreed that they would advance money for the business were to receive interest on their money, and were also to receive and apply the profits in liquidation of the indebtedness to them; in other words, for a series of years they were to receive the whole avails of the business, until the agreement expired by limitation of time, or until sooner terminated by their being paid for all advances. This gave to the parties the entire proprietorship of the business, and rendered them liable as partners to third persons for this contract in carrying it on. We think the case should have been submitted to the jury.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.