SMITH v SMITH

*Docket No. 81910. Argued January 4, 1989 (Calendar No. 1). Decided November 8, 1989.*

Mary C. Smith sought an increase in child support payments in the Washtenaw Circuit Court from Michael C. Smith for their daughter, and an extension of support beyond the child's eighteenth birthday because of certain permanent physical and mental deficiencies resulting from birth defects. The court, William F. Ager, Jr., J., denied the motion, holding that it lacked authority to award postmajority child support. The Court of Appeals, MACKENZIE, P.J., and ALLEN, J., and M. J. SHAMO, J., reversed, authorizing the award of postmajority support, and remanded the case for a determination of whether the child's condition amounted to an exceptional circumstance under the child support statute (Docket No. 90580). The defendant appeals.

In an opinion by Chief Justice RILEY, joined by Justice GRIFFIN, and opinions by Justices BOYLE and ARCHER, the Supreme Court *held:*

Current Michigan law does not provide for postmajority child support. The Age of Majority Act renders the exceptional-circumstances clause of MCL 552.17a; MSA 25.97(1) a legal nullity; support payments may not be awarded for a child who is beyond the age of majority, eighteen years.

Chief Justice RILEY, joined by Justice GRIFFIN stated:

1. Upon the dissolution of a marriage, MCL 552.17a; MSA 25.97(1) authorizes the court to require child support for minor children up to eighteen years of age and, in the event of exceptional circumstances, authorizes support payments beyond a child's eighteenth birthday. At the time § 17a became effective, the age of majority was twenty-one. After subsequent amendment of the Age of Majority Act reduced the age of majority from twenty-one to eighteen years, the legal validity

REFERENCES

Am Jur 2d, Courts §§ 84-86; Parent and Child §§ 55, 80; Statutes §§ 181, 254.

See the Index to Annotations under Age; Children; Custody and Support of Children.

of § 17a was put into question. Amendments of the child support and custody statutes enacted after the Age of Majority Act which employ the restrictive term "minor child" evidence a legislative intent to authorize support payments for the benefit of minor children only. In addition, case law interpreting § 17a supports the conclusion that the duration of child support payments is limited by the Age of Majority Act. Thus, the exceptional-circumstances clause of § 17a is a legal nullity. Support payments may not be awarded for a child who is beyond the age of majority, eighteen years.

2. MCR 3.209(B)(1)(b), although providing a contrary result, does not authorize a court to award postmajority child support. Court rules take precedence over statutes only in matters involving judicial rules of practice and procedure. The child support provision of § 17a is a matter of substantive law. Further, because a court's jurisdiction in a divorce proceeding is defined by statute, a court rule cannot expand jurisdiction to authorize child support beyond a child's eighteenth birthday.

3. Factors which have led to the award of postmajority child support in other jurisdictions do not exist in the current Michigan statute. As desirable as such support may be, the Supreme Court is restricted by the Michigan Constitution from reforming a moral obligation of a divorced parent of an adult child into a legal obligation.

Justice BOYLE, concurring, stated that the Age of Majority Act renders nugatory the exceptional-circumstances clause of § 17a of MCL 552.17a; MSA 25.97(1), governing the support of the minor children of divorced parents. In the absence of any specific indication of legislative intent with respect to the effect of the Age of Majority Act upon § 17a, the established principles of statutory construction and interpretation require the conclusion that the provisions cannot reasonably be reconciled, and that the earlier exceptional-circumstance clause of § 17a must be seen as repealed by necessary implication.

Justice ARCHER, concurring, stated that while the Court's holding is legally correct, that is not to say that parents who are capable of supporting their disabled adult children have no moral obligation to do so. The power to render into a legal duty a parent's moral obligation to support a disabled adult child rests exclusively with the Legislature.

Reversed.

Justice CAVANAGH, joined by Justice BRICKLEY, dissenting, stated that because the Legislature reduced the age of majority to eighteen years, but retained the exceptional-circumstances clause in the support statute, it had no intention to implicitly

repeal the provision for extended parental support. If the support statute is given effect as it is written, as long as a court obtains jurisdiction over a child when the child is a minor, the court has the authority to award postmajority support upon a showing of exceptional circumstances until those circumstances no longer exist. Exceptional circumstances are present when a child's mental or physical disabilities make it impossible for the child to be self-supporting. The decision of the Court of Appeals should be affirmed and the case remanded to the circuit court for a determination of whether exceptional circumstances are present.

Justice LEVIN, dissenting, stated that although the Age of Majority Act reduced the age of majority to eighteen, the circuit court continues to be empowered under § 17a of the divorce statute to require child support in exceptional circumstances until the child is twenty-one.

1. The Legislature, in enacting § 17a, intended that child support could be continued until age twenty-one, the age of majority at the time of enactment.

2. Child support is not a duty, liability, responsibility, or legal capacity of a child within the meaning of the Age of Majority Act. The act provides that rights previously acquired at twenty-one, thereafter would be acquired at eighteen.

3. The Age of Majority Act does not appear to concern or have as its purpose the reduction of rights acquired at or before birth. Rather, it accelerates the age at which rights, formerly not acquired until twenty-one, are acquired.

4. The history of the Age of Majority Act does not justify the conclusion that the exceptional-circumstances clause of § 17a of the divorce statute—which does not concern a right previously acquired at twenty-one or enumerated in the list of acts suspended—be repealed by implication.

163 Mich App 423; 414 NW2d 906 (1987) reversed.

1. DIVORCE — CHILD SUPPORT — AGE OF MAJORITY — EXCEPTIONAL CIRCUMSTANCES.

The Age of Majority Act renders the exceptional-circumstances clause of § 17a of the child support act a legal nullity; support payments may not be awarded for a child who is beyond the age of majority, eighteen years (MCL 552.17a, 722.51 *et seq.*; MSA 25.97[1], 25.244[51] *et seq.*).

2. STATUTES — COURT RULES — PRECEDENCE.

Court rules take precedence over statutes only in matters involving judicial rules of practice and procedure, not substantive law.

3. DIVORCE — CHILD SUPPORT — COURT RULES.
    The court rule that provides for payment of child support until a
    child reaches the age of majority, graduates from high school,
    or, under exceptional circumstances, until further order of the
    court, is superseded by the substantive provisions of § 17a of
    the child support act (MCR 3.209[B][1][b]; MCL 552.17a; MSA
    25.97[1]).

*Kluczynski, Girtz & Vogelzang* (by *Richard Radke, Jr.*) for the plaintiff.

*Shaner & Olsen, P.C.* (by *V. Carl Shaner*), for the defendant.

Amici Curiae:

*Joseph F. Lavey II* for Michigan Protection and Advocacy Service.

*Victor, Robbins & Bassett* (by *Scott Bassett*) for State Bar of Michigan Family Law Section.

RILEY, C.J. The issue we must decide in this case is whether the Age of Majority Act[1] effectively rendered as null and void the "exceptional circumstances" clause of MCL 552.17a; MSA 25.97(1). Upon dissolution of a marriage, § 17a grants the court jurisdiction to require either parent to make payments for the support of each child until the age of eighteen years, and in the case of "exceptional circumstances," support payments may be required after a child "attains that age."

We find that the amendments of the child support and custody statutes enacted subsequent to the passage of the Age of Majority Act, which employ the restrictive term "minor child," evidence a legislative intent to authorize support payments for the benefit of *minor* children only.

[1] MCL 722.51 *et seq.*; MSA 25.244(51) *et seq.*, effective January 1, 1972.

Further, the history of appellate court interpretation of § 17a supports the conclusion that the duration of child support payments is limited by the age of majority statute. Therefore, we conclude that the exceptional-circumstances clause of § 17a is a legal nullity and that support payments may not be awarded beyond the age of majority, eighteen years.

Accordingly, we find that the Court of Appeals erred in authorizing postmajority child support payments upon a finding of "exceptional circumstances." Thus, we reverse the decision of the Court of Appeals.

## I. FACTS AND PROCEEDINGS

The Washtenaw Circuit Court granted Mary Carlen Smith and Michael Clarke Smith a judgment of divorce on August 30, 1973. The parties had one child, Aimee, who suffers physical and mental deficiencies as a result of birth defects. These deficiencies have been diagnosed to be permanent.

In August of 1984, plaintiff filed a motion to increase child support and to extend support beyond Aimee's eighteenth birthday. The trial court denied the motion, holding that it lacked authority to award postmajority support. However, the Court of Appeals authorized the trial court to award postmajority support and remanded the case to determine whether Aimee's condition constituted an "exceptional circumstance."[2] Defendant sought leave to appeal, which we granted on June 22, 1988.[3]

[2] 163 Mich App 423; 414 NW2d 906 (1987).
[3] 430 Mich 890 (1988).

## II. ANALYSES

### A. LEGISLATIVE HISTORY

The child support statute upon which the issue centers is MCL 552.17a; MSA 25.97(1). The pertinent part of § 17a provides:

> The court shall have jurisdiction in making such order or judgment relative to the minor children of such parties as authorized in this chapter to award custody of each child to 1 of the parties or a third person until each child has attained the age of 18 years and may require either parent to pay such allowance as may be deemed proper for the support of each child until each child shall have attained that age and may in case of exceptional circumstances, require payment of such allowance for any child after he attains that age.

In the event of exceptional circumstances, Michigan courts have consistently authorized support payments beyond the prescribed statutory age, but limited such support to the age of majority, which was then twenty-one years. *Titus v Titus,* 311 Mich 434, 437; 18 NW2d 883 (1945); *Johnson v Johnson,* 346 Mich 418, 426; 78 NW2d 216 (1956).[4] However, the subsequent amendment of the Age of Majority

---

[4] The *Titus* Court interpreted 1939 PA 255, which provided:

> The court shall have jurisdiction in making such order or decree relative to the minor children of such parties as authorized in this chapter to award custody thereof to one of the parties or a third person until such children attain the age of 17 years and may require the husband to pay such allowance as may be deemed proper for their support until they respectively attain that age and may in its discretion in case of exceptional circumstances requiring the same, require payment of such allowance for any such child after he attains that age.

1939 PA 255 was then amended by 1954 PA 2 (interpreted by the *Johnson* Court). Finally, the current version of § 17a is a result of 1970 PA 182.

Act, which reduced the age of majority to eighteen years, put in question the legal validity of the exceptional-circumstances provision of § 17a.

We begin our analyses by looking at the first sentence of § 17a which provides: "The court shall have jurisdiction in making such order or judgment relative to the *minor children* of such parties as authorized in this chapter . . . ." MCL 552.17a; MSA 25.97(1) (emphasis added). Following this sentence, § 17a uses the word "child"[5] five additional times. *Webster's Ninth New Collegiate Dictionary* (1985) defines the term "child":

> 2a: a young person esp. between infancy and youth; b: a childlike or childish person; c: a person not yet of age.

Given this commonly accepted definition of "child" and the use of the words "minor children" in the first sentence of § 17a, we are persuaded that the Legislature intended the word "child" in § 17a to apply exclusively to minor children.[6]

Moreover, it is important to note that at the time the Legislature enacted § 17a, the age of majority in Michigan was twenty-one. Thus, absent exceptional circumstances, § 17a statutorily limited support payments up to the time of a child's eighteenth birthday, three years before the age of majority. It was this Court in *Johnson, supra,* that interpreted the exceptional-circumstances clause to allow support payments beyond a

---

Part B of this opinion reviews a history of Michigan appellate court decisions which require a parent to provide support payments under § 17a only until a child attains the age of majority.

[5] MCL 722.22(a); MSA 25.312(2)(a) defines "child": " 'Child' means minor child and children."

[6] We agree with the dicta provided in *State v Stevens,* 161 Ohio 432, 435; 119 NE2d 616 (1954), which offered: "The word 'children' is employed frequently to indicate only persons of immature years, the terms 'son' and 'daughter' are not used in this narrow connotation."

child's eighteenth birthday, but not beyond the age of majority.

After MCL 722.52; MSA 25.244(52) reduced the age of majority to eighteen years, in our judgment, amendments of the child support and custody laws evidence the intention of the Legislature to leave intact the *Johnson* rationale.

MCL 552.15; MSA 25.95 governs the care, custody, and support of *minor* children *during* the pendency of an action to dissolve a marriage. Specifically, § 1 of the current version of this statute, 1985 PA 214,[7] uses the term "minor children" three times; whereas, the preamendment version of § 1 referred only once to "minor children," and once to "children."[8]

---

[7] Section 15(1) provides:

After the filing of a complaint in an action to annul a marriage or for a divorce or separate maintenance, on the motion of either party or the friend of the court, or on the court's own motion, the court may enter such orders concerning the care, custody, and support of the *minor children* of the parties during the pendency of the action as the court considers proper and necessary. For the purposes of this section, "support" may include payment of the expenses of medical, dental, and other health care, child care expenses, and educational expenses. If a support order is entered, the court shall require that 1 or both parents shall obtain or maintain any health care coverage that is available to them at a reasonable cost, as a benefit of employment, for the benefit of the *minor children* of the parties. If a parent is self-employed and maintains health care coverage, the court shall require the parent to obtain or maintain dependent coverage for the benefit of the *minor children* of the parties, if available at a reasonable cost. [Emphasis added.]

[8] The pertinent part of the preamendment version of MCL 552.15; MSA 25.95 adopted *before* the Age of Majority Act, provided:

The court may, in like manner, on the application of either party, make such order concerning the care and custody of the *minor children* of the parties, and their suitable maintenance, during the pendency of such suit, as shall be deemed proper and necessary, and for the benefit of the *children* . . . . [Emphasis added.]

Similarly, MCL 552.16; MSA 25.96 governs the care, custody, and support of *minor* children *after* a divorce judgment. Again, the pertinent segment of the statute, § 16(1), refers only to "minor children."[9]

There can be no dispute that §§ 15 through 17a of Michigan's divorce laws, MCL 552.1 *et seq.*; MSA 25.81 *et seq.*, address the issue of child custody and support pursuant to a divorce action. Statutes in pari materia should be construed together. *Webster v Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948). Thus, § 17a, by its initial reference to "minor children," coupled with §§ 15 and 16 which refer exclusively to "minor children," evidence the intent of the Legislature to align the child support laws with the rationale that payments are to be limited by the age of majority, currently eighteen years.

Consistent with the legislative intent of §§ 15 through 17a is the 1980 amendment of the Child Custody Act.[10] 1980 PA 161, § 1 amended § 7(1) of

[9] 1985 PA 214, § 1 amended both MCL 552.15; MSA 25.95 and MCL 552.16; MSA 25.96. Specifically, § 16 provides:

> Upon annulling a marriage or entering a judgment of divorce or separate maintenance, the court may enter such orders as it considers just and proper concerning the care, custody, and support of the *minor children* of the parties. The court may require either parent to file a bond with 1 or more sufficient sureties, in a sum to be fixed by the court, guaranteeing payment of the support ordered in the judgment. For the purposes of this section, "support" may include payment of the expenses of medical, dental, and other health care, child care expenses, and educational expenses. The judgment shall require that 1 or both parents shall obtain or maintain any health care coverage that is available to them at a reasonable cost, as a benefit of employment, for the benefit of the *minor children* of the parties. If a parent is self-employed and maintains health care coverage, the court shall require the parent to obtain or maintain dependent coverage for the benefit of the *minor children* of the parties, if available at a reasonable cost. [Emphasis added.]

[10] MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*

the Child Custody Act *by deleting the "exceptional circumstances" clause.* Now, pursuant to § 7(1), a circuit court has authority to award support payments only until a child becomes eighteen years of age. Reference to "exceptional circumstances" has been completely omitted.[11]

Finally, 1972 PA 16 amended 1968 PA 293[12] for the specific purpose of reconciling the statute with the Age of Majority Act. 1972 PA 16, § 1 amended the definition of the term "minor" to "a person under the age of *18* years," from "a person under the age of *21* years." MCL 722.1(a); MSA 25.244(1)(a). The saving clause of this amendment, 1972 PA 16, § 2, preserves all rights and duties of a person incurred prior to January 1, 1972, "[a]s if [1971 PA 79] had not been passed."[13] 1972 PA 16

---

[11] The specific sections of § 7(1) provide:

    (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age. The court may require that support payments shall be made through the friend of the court or clerk of the court.

\* \* \*

    (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. [MCL 722.27(1); MSA 25.312(7)(1).]

[12] MCL 722.1; MSA 25.244(1). This statute, as it appears in the *Michigan Compiled Laws,* is editorially entitled: "Status and Emancipation of Minors; Rights of Parents."

[13] The full text of the saving clause, 1972 PA 16, § 2 provides:

    This act does not impair or affect any act done, offense committed, or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to January 1, 1972, but the same may be enjoyed, asserted, enforced, prosecuted, or inflicted as if Act No. 79 of the Public Acts of 1971, being sections 722.51 to 722.55 of the Compiled Laws of 1948 had not been passed. Proceedings pending at the effective date of Act No. 79 of the Public Acts of 1971, and proceedings instituted thereafter for any act, offense committed, right accruing, accrued, or acquired, or liability, penalty, forfeiture or

also amended § 4(1)(b) of the emancipation statute which now provides: "(1) An emancipation occurs by operation of law: (b) When a person reaches the age of 18 years."[14] In fact, throughout the entire emancipation statute, *reference is only made to "a minor."* See MCL 722.4; MSA 25.244(4).[15]

---

punishment incurred before the effective date of Act No. 79 of the Public Acts of 1971 may be continued or instituted under and in accordance with the law in force at the time of the commission of the act, offense committed, right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred.

[14] As a result of 1988 PA 403, this language now appears as MCL 722.4(2)(b); MSA 25.244(4)(2)(b).

[15] The dissent points to the Family Support Act, MCL 552.451 *et seq.*; MSA 25.222(1) *et seq.*, as "an indication of the Legislature's intention to retain, not to repeal, provisions authorizing the courts to require the payment of postmajority support in certain circumstances." *Post,* p 654. However, § 1 of the act provides:

> *Any married parent* who has a minor child or children living with him or her and who is living separate and away from his or her spouse who is the noncustodial parent of the child or children, and who is refused financial assistance by the noncustodial parent to provide necessary shelter, food, care, and clothing for the child or children, if the spouse is of sufficient financial ability to provide such assistance, may complain to the circuit court for the county where either parent resides for an order for support for himself or herself and the minor child or children. The proceedings shall be commenced by the filing of a complaint verified by the petitioner and by issuance of a summons which shall be personally served upon the noncustodial parent of the children and spouse of the petitioner. *A complaint shall not be filed nor shall any summons issue if divorce or separate maintenance proceedings are then pending between the petitioner and his or her spouse.* [Emphasis added.]

Thus, the Family Support Act is specifically directed toward *married* parents. Relief under this act is expressly precluded when the parents are divorced. In fact, the argument that the Family Support Act authorizes postmajority child support to the child of divorced parents was rejected by Justice CAVANAGH when he participated in *Sumerix v Sumerix,* 106 Mich App 7, 9-10; 307 NW2d 727 (1981). Specifically, *Sumerix* held:

> It does not appear to us that the Family Support Act is even applicable to proceedings to modify a judgment of divorce. The

The amendments of the Child Custody Act and the emancipation statute exemplify how the Legislature has acted to conform the laws governing the protection and support of children with the Age of Majority Act.[16] Quoting from Kaimowitz, *Legal emancipation of minors in Michigan,* 19 Wayne L R 23, 24 (1972):

> If a legislative body wishes, for whatever purpose, it can wave a magic wand and emancipate him [a minor] to suit its convenience. Though 21 usually is the dividing line between minority and majority, the age of majority in Michigan is now 18. The state seemingly can be as arbitrary as it pleases in raising or lowering the barrier for all or just some purposes.[11]
>
> ---
>
> [11]"It is impossible for any person to fix the exact time when a child is capable of protecting itself. The legislative judgment in regard to the proper age at which such regulations shall become applicable to the child cannot be interfered with by the courts." *In re Weber,* 149 Cal 392, 395; 86 P 809 (1906).
>
> ---

While the Legislature has the ability to "waive a magic wand," this Court is bound to interpret § 17a in accordance with the intent of the Legisla-

act appears to be applicable only where the marriage is still legally intact. Section 1 of the act, MCL 552.451; MSA 25.222(1), provides that "[n]o complaint shall be filed nor shall any summons issue if divorce or separate maintenance proceedings are then pending between the petitioner and her husband." Since the parties in the present case were divorced in December, 1969, MCL 552.17a; MSA 25.97(1) is the child support statute applicable to this case. ,

*We thus find defendant's reliance on the Family Support Act misplaced because the statute is inapposite.* [Emphasis added.]

As such, we conclude that the Family Support Act is not in pari materia with § 17a. Therefore, the dissent's reliance upon it is erroneous.

[16] MCL 722.4(1)(b); MSA 25.244(4)(1)(b).

ture. Const 1963, art 3, § 2,[17] and art 4, § 1.[18] The power to statutorily limit the duration of child support payments is within the exclusive discretion of the Legislature. Though nearly a century old, the holding of *Detroit v Wayne Co Circuit Judge,* 79 Mich 384, 387; 44 NW 622 (1890), is applicable. ("It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government.") See also *Wayne Co Prosecutor v Wayne Co Bd of Comm'rs,* 93 Mich App 114, 121; 286 NW2d 62 (1979) ("The judiciary will not interfere with the discretionary actions of the legislative bodies").

The Legislature has taken affirmative action to amend the child support laws, the Child Custody Act, and the Emancipation of Minors Act. All of the amendments evidence a legislative intent to retain the longstanding rule that support payments are to be limited by the age of majority.[19] It is the intent of the Legislature, supported by its affirmative actions, which we find persuasive.[20] The contention by the dissent that we are "relying on legislative silence," *post,* p 652, is wholly un-

---

[17] Article 3, § 2 provides:

> The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

[18] Article 4, § 1 provides:

> The legislative power of the State of Michigan is vested in a senate and a house of representatives.

[19] See part B of this opinion.

[20] Ten years ago, Justice CAVANAGH agreed that this was, in fact, the intent of the Legislature. See the emphasized language in the text below, *post,* pp 620-621, quoting *McNames v McNames,* 93 Mich App 477, 480; 286 NW2d 892 (1979).

founded and in disregard of the actions of the Legislature. When a legislature enacts or amends a statute, it must be presumed to have knowledge of existing statutes and laws. *People v Rosecrants,* 88 Mich App 667, 670; 278 NW2d 713 (1979). Therefore, we conclude that the exceptional-circumstances clause of MCL 552.17a; MSA 25.97(1) is legally void.[21]

We acknowledge that this conclusion is contrary to MCR 3.209(B)(1)(b), originally adopted by this Court in 1972 as GCR 1963, 729.2(1).[22] However, this Court has said that court rules may take precedence over statutory language only in matters involving judicial rules of practice and proce-

[21] This holding is limited to the issue whether a court may require postmajority child support payments pursuant to § 17a. We note that support for an adult child may be ordered pursuant to the Michigan poor law, MCL 401.1 *et seq.*; MSA 16.121 *et seq.* Specifically, § 6 provides:

> If it shall appear that any such relative is unable wholly to maintain such poor person, but is able to contribute towards his support, the court may, in its discretion, direct 2 or more relatives of different degrees to maintain such poor person, and shall prescribe the proportion which each shall contribute for that purpose; and if it shall appear that the relatives liable as aforesaid are not of sufficient ability wholly to maintain such poor person, but are able to contribute something therefor, the court shall direct the sum, in proportion to their ability, which such relatives shall severally pay weekly or monthly for that purpose.

The dissent correctly points out that parental support can be required for disabled adult children under the Michigan poor law, *post,* pp 654-655, thus revealing the internal inconsistency of the dissenting opinion and undercutting its claim that our decision places the financial responsibility "solely on the state and on custodial parents." *Post,* p 641.

[22] (1) A support order or final judgment must

\* \* \*

(b) provide for payment for a child until a child reaches the age of majority or graduates from high school, whichever is later, or, in exceptional circumstances, until the further order of the court.

dure. See *Perin v Peuler,* 373 Mich 531; 130 NW2d 4 (1964). The child support provision of § 17a is a matter of *substantive* law and, as such, supersedes MCR 3.209(B)(1)(b).

Furthermore, because the court's jurisdiction in a divorce proceeding is defined by statute, the court rule cannot expand jurisdiction to authorize child support beyond a child's eighteenth birthday. *Felcoski v Felcoski,* 159 Mich App 762; 407 NW2d 11 (1987). Therefore, we hold that MCR 3.209(B)(1)(b) does not provide a court authority to award postmajority child support. Moreover, insofar as this court rule may interfere with any legislative act governing substantive law, the court rule is without legal effect.[23]

While the dissent does not contradict the rule that substantive statutory language supplants a contradictory court rule, it does make the claim that MCR 3.209(B)(1)(b) "is a further indication that the appellate courts of this state have not clearly resolved this issue, and that, therefore, the Legislature cannot be held to have acquiesced in what the appellate courts of this state have not finally resolved." *Post,* p 652.

Ironically, Justice CAVANAGH participated in a Court of Appeals decision which addressed this precise issue, involving the same statute and the same court rule. In *McNames v McNames,* 93 Mich App 477, 480; 286 NW2d 892 (1979), the Court cited verbatim *Price v Price,* 51 Mich App 656, 660-661; 215 NW2d 756 (1974), which held:

"The problem arises when we attempt to insert the court rule in place of the statutory language.

---

[23] See Levin & Amsterdam, *Legislative control over judicial rule-making: A problem in constitutional revision,* 107 U Pa L R 1, 14 (1958), where the authors declare: "Nothing could be clearer than the fact that courts in the exercise of the rule-making power have no competence to promulgate rules governing substantive law."

The Supreme Court itself has indicated that court rules may take precedence over statutory language only in matters involving judicial rules of practice and procedure. *Perin v Peuler,* 373 Mich 531; 130 NW2d 4 (1964). This being a matter of the substantive law, the legislative enactment must control. *The trial court's reliance on GCR 1963, 729.2(1) to justify an award of support to a child who has reached the age of majority contravenes the Legislature's expressed intent in the statute enabling a circuit court to award any support at all,* as interpreted by decisions of the Supreme Court. Until such time as the Legislature sees fit to settle the inconsistency between the support statute and the Age of Majority Act, we are bound to follow its mandate." [Emphasis added.]

The correctness of this reasoning was not assailed by our Supreme Court when it reversed the result in *Price v Price,* 395 Mich 6; 232 NW2d 630 (1975).

Thus, the conclusion of the dissent is not only in conflict with the prior position of its author, it contravenes the history of Michigan jurisprudence. Notwithstanding the present matter before us and its progeny, no final Michigan appellate decision has sustained an award of postmajority child support.

### B. JUDICIAL INTERPRETATION

This Court has consistently held that support payments may be required only until a child attains the age of majority. This principle was recognized over 120 years ago in *Chaffee v Chaffee,* 15 Mich 184, 190 (1867), when Justice CHRISTIANCY wrote:

The daughter is above the age of majority, and however desirable it might be that she should be provided for with the mother, I can discover no

recognized principle upon which it can be done by a decree in this proceeding.[24]

The "exceptional circumstances" clause was addressed when continued support was sought beyond the statutory age limit of seventeen years to allow a child to achieve a high school diploma. In interpreting 1940 CL 12739-1,[25] the precursor of today's § 17a, this Court held that extended support for educational purposes did constitute an exceptional circumstance. However, it extended the support payments for only eighteen months beyond the child's seventeenth birthday, well before he reached the age of majority, twenty-one years. *Barry v Barry*, 291 Mich 666; 289 NW 397 (1939). Similarly, the Court held that educational pursuit constituted an exceptional circumstance in *Titus, supra.* Again, the support was specifically limited by the age of majority: "[T]he allowance must thereupon cease, and shall cease in any case upon [the child's] arrival at majority . . . ." In *Rybinski v Rybinski*, 333 Mich 592; 53 NW2d 386 (1952), the Court once more held that support could not be ordered after the child had reached her majority.

*Barry, Titus,* and *Rybinski* all provided the framework for the *Johnson* decision, which prohibited required support beyond a child's majority age even though exceptional circumstances existed.[26]

After the Age of Majority Act became effective, this Court and the Court of Appeals continued to follow the same line of reasoning, which effectively negated the legal authority of the exceptional-circumstances clause of § 17a.

---

[24] Justice Cooley concurred in this opinion.

[25] Although this act was approved June 15, 1939, it was not given immediate effect.

[26] As indicated above, *Johnson* was the first case in which the Court interpreted § 17a, together with the age of majority.

This issue was addressed in *Price v Price,* 51 Mich App ˙656; 215 NW2d 756 (1974), rev'd on other grounds 395 Mich 6; 232 NW2d 630 (1975), when the Court of Appeals held:

> The clear intent of the Legislature, as expressed in this enactment and as authoritatively interpreted by decisions of the Michigan Supreme Court, indicates that there is no right to receive support payments after the age of majority is reached. The statute explicitly provides that the above jurisdiction is "relative to the *minor* children" of the parties. (Emphasis supplied.) The succeeding clauses allowing support for children attaining the age of 18 must be read, then, in the context of *minor* children. When the statute was enacted, it was possible for a minor child to be over the age of 18, since the age of majority was 21. [51 Mich App 658.]

Additionally, the *Price* Court said:

> Since the Legislature has made an 18-year-old an adult for all purposes whatsoever, *notwithstanding any law to the contrary,* support cannot properly be awarded to a child who has reached the age of 18. [51 Mich App 660. Emphasis in original.]

In reviewing the *Price* decision, the Court chose not to invalidate the lower court's reasoning, but rather to reverse on the basis of the saving clause of the Age of Majority Act.[27] In *Price,* the rights of the child accrued prior to the effective date of

[27] Specifically, this clause provides:

> This act does not impair or affect any act done, offense committed or right accruing, accrued or acquired, or a liability, penalty, forfeiture or punishment incurred before this act takes effect, but the same may be enjoyed, asserted and enforced, as fully and to the same extent as if this act had not been passed. Such proceedings may be consummated under and in accor-

MCL 722.52; MSA 25.244(52). Therefore, the eighteen-year age of majority was not applicable, and the twenty-one-year age of majority did apply. Accordingly, this Court granted support payments until the child attained the applicable majority age, twenty-one years.

Though the courts have never dissented from the rule that the age of majority limits the duration of child-support payments, this saving clause has been used, when applicable, to provide for support up to a child's twenty-first birthday. See *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976); *Milbrand v Milbrand,* 66 Mich App 730; 239 NW2d 730 (1976); *Barbier v Barbier,* 45 Mich App 402; 206 NW2d 464 (1973).

The *Johnson* and *Price* decisions provided the foundation for a series of cases which, absent an express agreement to the contrary, negate the obligation of a parent to provide child support payments beyond the age of majority, eighteen years. See *Arndt v Kasem,* 135 Mich App 252; 353 NW2d 497 (1984), *Boyd v Boyd,* 116 Mich App 774; 323 NW2d 553 (1982), *Sumerix v Sumerix,* 106 Mich App 7; 307 NW2d 727 (1981), *McNames v McNames, supra,* and *Allen v Allen,* 63 Mich App 475; 235 NW2d 22 (1975).[28]

dance with the law in force at the time the proceedings are or were commenced. Proceedings pending at the effective date of this act and proceedings instituted thereafter for any act, offense committed, right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred before the effective date of this act may be continued or instituted under and in accordance with the law in force at the time of the commission of the act, offense committed, right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred. [MCL 722.54; MSA 25.244(54).]

[28] In writing for the dissent, Justice Cavanagh states, "I find nothing in this provision [Age of Majority Act] to indicate that the Legislature intended to explicitly repeal the exceptional-circumstances clause of § 17a." *Post,* p 647. We note that this is in conflict

The only indication that appears contrary to this significant body of case law is in footnote 5 of *Price.*[29] However, this footnote has no value as a legal precedent and was identified as merely "dicta" by the Court of Appeals. *Parrish v Parrish,* 138 Mich App 546, 551; 361 NW2d 366 (1984) (parents have no obligation to support their adult children).

While this footnote does provide that "[t]he Age of Majority Act does not purport to deprive persons between the ages of 18 and 21 of any rights theretofore enjoyed by them . . . ," the saving clause of the Age of Majority Act[30] specifically provides that rights "incurred before the effective date of this act may be continued or instituted

with several Court of Appeals cases in which Justice CAVANAGH participated. See *Boyd, supra* (absent an express agreement between the parties to provide for support beyond the child's eighteenth birthday, the Age of Majority Act precludes such a result), and *Sumerix, supra* (the Age of Majority Act negates any obligation for support beyond age eighteen absent a reservation in the original divorce judgment of the right to extend support in the future).

Thus, we read n 19 of the dissent as Justice CAVANAGH's acknowledgment that he has reversed the position he took in *Boyd, Sumerix,* and *McNames.*

[29] 395 Mich 11, n 5, provides:

While our disposition in this case rests upon the applicability of the saving provision, we are also inclined to the view that even after the effective date of the Age of Majority Act a court may enter an order or amend an order to provide for the college education of a person for whom a support order had been entered before he or she was 18. The Age of Majority Act does not purport to deprive persons between the ages of 18 and 21 of any rights theretofore enjoyed by them, but instead grants to persons of 18 the rights and legal capacities formerly withheld until they were 21. Since a college education has long come within the purview of "exceptional circumstances" recognized by the support statute, *Johnson v Johnson,* 346 Mich 418, 426; 78 NW2d 216 (1956), it would appear that such an order ought to be entirely proper for the period between the ages of 18 and 21 years. Further, to interpret the two statutes otherwise would render nugatory the entire provision concerning "exceptional circumstances" in the support statute.

[30] See n 26.

under and *in* accordance with the law *in* force at the time of the . . . right accruing, accrued or acquired . . . ." MCL 722.54; MSA 25.244(54). Although the Age of Majority Act did not purport to deprive anyone of existing rights, these rights were nonetheless restricted by law existing prior to January 1, 1972. The law prior to January 1, 1972, authorized support payments only until a child attained the age of majority. *Johnson, supra.* Therefore, the inference of the footnote is frustrated by the same legal authority from which it appears to have been borne.[31]

Again, we note that since the release of the *Price* decision by this Court fourteen years ago, the rationale behind this footnote, and the inference implicit therein, has never been persuasive in any proceeding before a Michigan appellate court save in the matter before us today and its progeny.

The dissent asserts that our decision is based "[p]rimarily in reliance on this Court's decision in *Johnson* . . . ." *Post,* pp 643-644. The dissent goes on to claim that we have employed a "dubious analysis of legislative intent . . . that is clearly

---

[31] The dissent cites with approval *Price,* 395 Mich 11, n 5, " 'Age of Majority Act does not purport to deprive persons between the ages of 18 and 21 of any rights theretofore enjoyed by them . . . .' " *Post,* p 647. However, it fails to acknowledge that the right to child support "theretofore enjoyed" was, in fact, limited by the age of majority. Thus, the footnote does not support the argument for postmajority child support. After observing that this Court's *Price* decision was based on the saving provision of the Age of Majority Act, the dissent again cites footnote 5 for the proposition that "[a]lthough the Court in *Price* did not directly resolve the issue presented here, it stated that the two provisions [Age of Majority Act and § 17a] should be read so as to avoid rendering nugatory the exceptional-circumstances provision." *Post,* p 649. However, it is interesting to note that had the Court chosen to read the exceptional-circumstances clause as providing for postmajority support, it could have provided the child with support for the full *four* year college curriculum. Yet instead, it resolved the matter pursuant to the saving provision, thereby limiting college support to *three* years (at the relevant majority age of twenty-one years, the child would have only completed three years of college).

contrary to express statutory language . . . ."
*Post,* p 658. Finally, it argues that we are attempt-
ing to "reduce [our] responsibility for this result by
stating that the result reflects the will of the
Legislature and that to hold otherwise would be a
usurpation of legislative power." *Id.*

Not so. What we have done by our decision
today is recognize that the overriding responsibil-
ity of this Court is to act within the limits of its
authority as expressed in the constitution of this
state.[32] The authority to determine the duration of
child support payments is vested in the Legisla-
ture, not this Court. See Kaimowitz, *ante,* p 617.
The dissent fails to acknowledge, or even to ad-
dress, the fact that the amendments of §§ 15-17a of
the child support laws enacted by the Legislature
after the reduction of the age of majority have
resulted in an increased use of the limiting word
"minor." See *ante,* pp 611-619.

Furthermore, the dissent, in mischaracterizing
our opinion as being based "primarily in reliance"
on *Johnson,* totally disregards Michigan's history
of judicial interpretation regarding the duration of
child support payments. Our decision is based on
the express actions of the Legislature and on an
analysis of how legislative action has been inter-
preted by our appellate courts. While persuasive,
*Johnson* is but one instance in a forty-five-year
survey of Michigan case law. See *ante,* pp 621-626.

### C. OTHER JURISDICTIONS

A review of other jurisdictions reveals that
states which provide for postmajority support can
be broken down into two categories: (1) those
which have enacted specific statutory language,
and (2) those in which courts have interpreted the

[32] See ns 17, 18.

support statute to include adult children when the statute merely refers to "child," as opposed to the term "minor child."

In the first category, the child support statute of each state provides express jurisdiction. Examples of states with express jurisdiction include Illinois, Indiana, Iowa, Oregon, and Washington.

The Illinois Marriage & Dissolution Act provides "relevant factors" for a court to consider when determining a reasonable amount of support that "either or both parents owing a duty of support to a child of the marriage" must pay.[33] One of the factors, § 505(2)(d) is "the physical and emotional condition of the child . . . ." The Illinois statute does not limit the duration of child support by use of the term "minor child."

Similarly, the Indiana dissolution of marriage laws include the "physical or mental condition of the child and his educational needs"[34] as relevant factors to consider in awarding child support.[35] Indiana takes one step further to add the provision that the "duty to support a child under this chapter ceases when the child reaches his twenty-first (21st) birthday unless . . . (2) the child is incapacitated in which case the child support continues during the incapacity or until further order of the court."[36]

Iowa has provided for postmajority child support in its statutory definition of the word "support."[37] Here, support includes obligations "for a child who is between the ages of eighteen and twenty-two years who is regularly attending an accredited

[33] Ill Ann Stat, ch 40, ¶ 505.

[34] A 1983 amendment of the Oregon child support statute employs similar language. See Or Rev Stat, § 107.105(c)(E).

[35] Ind Code, § 31-1-11.5-12(a)(3).

[36] Ind Code, § 31-1-11.5-12(d)(2).

[37] Iowa Code Ann, § 598.1(2).

school . . . leading to high school diploma or its equivalent . . . vocational-technical training . . . a full-time student in a college, university, or area school . . . ; *or a child of any age who is dependent on the parties to the dissolution proceedings because of physical or mental disability.*" (Emphasis added.)[38]

Prior to lowering its age of majority from twenty-one to eighteen years in 1971, Washington recognized only a duty to provide support for minor children.[39] However, Washington revised its Divorce Act in 1973. The Dissolution of Marriage Act of 1973 was amended to provide, "the court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support."[40] In *Childers v Childers,* 89 Wash 2d 592, 597; 575 P2d 201 (1978), the Washington Supreme Court held, "[w]e construe the dissolution act as basing any support obligation on dependency, not minority, and ending the obligation at emancipation, not majority." One of the factors the court found persuasive was the fact that the Washington Legislature *removed all reference to the term "minor"* when it revised the dissolution act in 1973. *Child-*

---

[38] *Id.*

[39] See Note, *Domestic relations—post-minority child support in dissolution proceedings*—Childers v Childers, 89 [Wash] 2d 592; 575 P2d 201 (1978), 54 Wash L R 459 (1979).

[40] Wash Rev Code Ann, § 26.09.100. This statute has subsequently been amended to provide, "the court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount determined pursuant to the schedule adopted under [§] 26.19.040."

The schedule adopted under § 26.19.040(2) includes such factors as, "(b) [a]ppropriate adjustments for significant changes in child rearing costs at different age levels; . . . (d) [p]rovisions for health care coverage and, when needed, child care payments . . . ." Finally, § 26.19.040 calls for a review of the schedule and any proposed changes "as needed each even-numbered year."

*ers* at *596.* Washington courts continue to cite *Childers* as authority for the award of postminority child support. See *In re Marriage of Nielsen,* 52 Wash App 56; 757 P2d 537 (1988).

In the second category, state courts have relied on the lack of restrictive language in the child support statutes for their decisions. The fact that the word "minor" did not appear before the word "child" in the statute was interpreted as to allow a court jurisdiction to award postmajority child support. Examples of these states include New Hampshire, New Jersey, New York, and Pennsylvania.[41]

However, in the State of New Hampshire, after its supreme court held that the statute did not preclude postmajority child support,[42] its legislature amended the statute to expressly limit support until a child reaches the age of eighteen. Yet, the legislature added a provision to award postmajority support for handicapped children: "If the order involves a handicapped child, the court shall specify the duration of the order, which may be beyond the time when the child reaches the age of 18."[43]

Our legislative analysis and case-law review make it evident that the factors which have led to the award of postmajority child support in other jurisdictions do not exist in the present Michigan statute. A thorough analysis of the cases cited by the dissent serves only to buttress this conclusion.

The dissent cites *Ex parte Brewington,* 445 So 2d 294 (Ala, 1983), wherein the Alabama Supreme Court held that the Alabama child support laws

---

[41] See Horan, *Postminority support for college education—A legally enforceable obligation in divorce proceedings?* 20 Fam L Q 589 (1987).

[42] *French v French,* 117 NH 696; 378 A2d 1127 (1977).

[43] NH Rev Stat Ann, § 458:35-c. Also, the State of Alaska, which previously provided for postmajority child support, no longer maintains this view. See *Dowling v Dowling,* 679 P2d 480 (Alas, 1984) (no postmajority educational support).

should not be interpreted as limiting support only to "minor" children. The primary reason for the decision was the fact that the Alabama child support laws did not use the word "minor" before the word "children." Therefore, the application of the *Brewington* court reasoning to the Michigan child support laws, which employ the word "minor," leads to a result consistent with our opinion. Thus, Alabama falls under the category of states whose courts have relied on the lack of restrictive language in their child support statutes. See *ante,* p 630.

The dissent quotes *Koltay v Koltay,* 667 P2d 1374 (Colo, 1983), in which the Colorado Supreme Court interpreted that state's child support law. The Colorado law, based on the Uniform Dissolution of Marriage Act, provides for child support which is to terminate upon a child's "emancipation." The court held that a physically or mentally disabled child who is incapable of self-support is not emancipated. However, the *Koltay* court employed a review of the history of Colorado's dissolution of marriage legislation that is similar to the legislative analysis we have employed. See *ante,* pp 611-619. The Colorado Supreme Court found persuasive the fact that in 1958 the Colorado Legislature amended its dissolution of marriage legislation to remove the word "minor," and again enacted new legislation in 1971 when it replaced the Colorado divorce statute with the Uniform Dissolution of Marriage Act.

The current Colorado statute, interpreted by the *Koltay* court, authorized support for a " 'child of the marriage' after considering several factors, including the . . . physical and emotional condition [of the child]." *Koltay* at 1377. Therefore, Colorado falls under the category of jurisdictions that provide specific statutory language which au-

thorizes postmajority child support. See *ante,* pp 628-630.

Finally, the dissent cites cases from the District of Columbia Court of Appeals[44] and from the Supreme Court of Ohio.[45] However, both of these cases are based on the *absence* of any statutory provision contrary to postmajority child support.[46] As amply demonstrated by this opinion, Michigan's statutory provisions are expressly contrary to the award of postmajority child support.

Section 17a *does* contain the limiting language of "minor child." Moreover, amendments of §§ 15-16 of the child support statute that occurred *after* the change of the majority act have only increased the use of this restrictive language. As one commentator has noted, "where statutes limit support orders to minors, only a legislative change can remove the obstruction."[47] As inequitable as it may appear, Michigan remains in the majority of states that do not provide postmajority child support.[48]

### III. CONCLUSION

We have considered the legislative amendments of the child support statutes and the voluminous case law regarding the issue of postmajority child support. In weighing these factors against the

---

[44] *Nelson v Nelson,* 548 A2d 109 (DC App, 1988).

[45] *Castle v Castle,* 15 Ohio St 3d 279; 473 NE2d 803 (1984).

[46] As with *Brewington, supra,* the District of Columbia and Ohio would fall under the category of jurisdictions whose courts have relied on a lack of restrictive statutory language.

[47] Washburn, *Post-majority support: Oh dad, poor dad,* 44 Temp L Q 319, 331 (1971).

[48] It would be misleading to say that there is a national trend toward permitting postminority support. While some states are indeed passing legislation toward that end, and some courts are interpreting ambiguous statutes in such a way to permit postminority support for education, it remains a minority view. [Horan, n 41 *supra,* p 602.]

*Price* footnote, we conclude that current Michigan law does not provide for postmajority child support.

In *Price,* this Court reiterated the words of the Court of Appeals *Price* decision: "[The Court of Appeals] sent a veiled message to the Legislature to 'settle the inconsistency between the support statute [§ 17a] and the Age of Majority Act.'" 395 Mich 9. The Legislature has declined the invitation this Court extended fourteen years ago in *Price.* We urge the Legislature to reconsider the child support laws in order to align them with the laws of those states that have expressly provided for postmajority child support. For, as desirable as it may be, we are restricted by the constitution of our state from reforming the moral obligation of a divorced parent of an adult child into that of a legal obligation.

The inescapable conclusion to be drawn is that the Legislature has acquiesced in the judicial construction given § 17a pursuant to the passage of the Age of Majority Act. Therefore, we hold that the Age of Majority Act renders nugatory the exceptional-circumstances provision of § 17a. Accordingly, we reverse the decision of the Court of Appeals.

GRIFFIN, J., concurred with RILEY, C.J.

BOYLE, J. (*concurring*). I agree with Chief Justice RILEY that the Age of Majority Act, MCL 722.51 *et seq.*; MSA 25.244(51) *et seq.,* "renders nugatory" the exceptional-circumstances clause of § 17a of the divorce statute,[1] governing the support of the minor children of divorced parents. MCL 552.17a; MSA 25.97(1). I write separately, however, to iden-

---

[1] MCL 522.1 *et seq.*; MSA 25.81 *et seq.*

tify the legal foundation upon which I believe we must base this clearly exceptional conclusion.

The defendant in this case argues that the reduction in the age of majority from age twenty-one to age eighteen by the Age of Majority Act has called into question the effect of the exceptional-circumstances clause of § 17a. That clause, by its terms, authorizes the circuit courts to grant support for a child even after the child has attained the age of eighteen; however, the clause has been consistently read by this Court not to allow such support after the child has reached the age of majority. Since the age of majority has been lowered to eighteen, the defendant argues, the exceptional-circumstances clause can no longer be given any practical effect.

Although the defendant has not specifically identified it as such, his fundamental legal argument, in my view, and as stated by both Justice CAVANAGH and the Court of Appeals, is essentially that the Age of Majority Act repeals the exceptional-circumstances clause of § 17a by necessary implication. Try as I might, I am unable to disagree with the defendant. I reach this conclusion despite my understanding that, as Justice CAVANAGH observes, the repeal of statutes by implication is strongly disfavored:

> "Repeal by implication is not permitted if it can be avoided by any reasonable construction of the statutes. *Couvelis v Michigan Bell Telephone Co,* 281 Mich 223 [274 NW 771 (1937)]; *People v Hanrahan,* 75 Mich 611 (4 LRA 751) [42 NW 1124 (1889)]. If by any reasonable construction 2 statutes can be reconciled and a purpose found to be served by each, both must stand, *Garfield Twp v A B Klise Lumber Co,* 219 Mich 31 [188 NW 459 (1922)]; *Edwards v Auditor General,* 161 Mich 639 [126 NW 853 (1910)]; *People v Harrison,* 194 Mich

363 [160 NW 623 (1916)]. The duty of the courts is to reconcile statutes if possible and to enforce them, *Bd of Control of the Michigan State Prison v Auditor General,* 197 Mich 377 [163 NW 921 (1917)]. The courts will regard all statutes on the same general subject as part of 1 system and later statutes should be construed as supplementary to those preceding them, *Wayne Co v Auditor General,* 250 Mich 227 [229 NW 911 (1930)]. See, also, *Rathbun v State of Michigan,* 284 Mich 521 [280 NW 35 (1938)]." *People v Buckley,* 302 Mich 12, 22 [4 NW2d 448 (1942)].

"This court has held that only, when 2 acts are so incompatible that both cannot stand, does a later act repeal a former." *In re Estate of Reynolds,* 274 Mich 354, 360 [264 NW 399 (1936)]. [*Valentine v Redford Twp Supervisor,* 371 Mich 138, 144; 123 NW2d 227 (1963).]

See also *Council No 23 v Recorder's Court Judges,* 399 Mich 1, 8; 248 NW2d 220 (1976) (opinion of WILLIAMS, J.), *Rockwell v Crestwood School Dist,* 393 Mich 616; 277 NW2d 736 (1975) (opinion of WILLIAMS, J.), *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), and 1A Sands, Sutherland Statutory Construction (4th ed), § 23.10, pp 346-347.

Put simply, I agree with the defendant that these two provisions of law simply cannot stand together. As interpreted by this Court in *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), the exceptional-circumstances clause of § 17a allows a circuit court to award support for a child *after* he attains the age of eighteen, but only until he reaches the age of majority. The Age of Majority Act states that the age of majority is eighteen. The conflict between these two acts is thus clear and unavoidable. Given the reduction in the age of majority to eighteen, there can be no time during which support can be awarded after a child attains

the age of eighteen, but before he reaches majority.

It is, of course, very tempting to follow the course taken by Justice CAVANAGH in his dissent, of simply overturning the decision in *Johnson,* along with the earlier decisions upon which it relied,[2] and finding that under the literal language of the clause support can be awarded after the child reaches the age of eighteen and for as long as the exceptional circumstances exist. Were it not for the actions of the Legislature itself following these decisions, Justice CAVANAGH's position might be persuasive. However, while I believe that Justice CAVANAGH's admonition against relying too heavily on legislative silence when construing statutory provisions applies with some force here, *post,* pp 652-653, I find myself unable to accept his solution in light of the subsequent reënactment of § 17a in 1970, only shortly before the Age of Majority Act, but long after the limited construction had, without fail, been given to the exceptional-circumstances clause by this Court.

The Legislature is presumed to know of existing interpretations of legislation. *Longstreth v Gensel,* 423 Mich 675, 691; 377 NW2d 804 (1985); *Smith v Detroit,* 388 Mich 637, 650; 202 NW2d 300 (1972); *Jeruzal v Wayne Co Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957). Thus, it is a well-established rule of statutory construction that when the Legislature, with this presumed knowledge of prior judicial interpretation, reënacts a statute or provision in substantially the same form as that interpreted, it is deemed to have adopted the interpretation into the language of the statute or provision. As stated in *Jeruzal, supra,* p 534:

---

[2] See, e.g., *Rybinski v Rybinski,* 333 Mich 592; 53 NW2d 386 (1952); *Titus v Titus,* 311 Mich 434; 18 NW2d 883 (1945).

In passing this legislation, the legislature is presumed to have known of the [prior] judicial interpretation of this Court [of the language of the statute], . . . and, also, to have known that *when a statute, clause or provision thereof, has been construed by the court of last resort of this State and the same is substantially re-enacted the legislature adopts such construction, unless the contrary is clearly shown by the language of the act.* See *People v Powell,* 280 Mich 699 (111 ALR 721) [274 NW 372 (1937)]. [Emphasis added.]

See also *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956); *Wood v Detroit Edison Co,* 409 Mich 279, 293-294; 294 NW2d 571 (1980) (opinion of MOODY, J.); *Breckon v Franklin Fuel Co,* 383 Mich 251, 295; 174 NW2d 836 (1970) (ADAMS, J., dissenting); *Smith v Detroit, supra,* pp 650-651.[3]

In this case, we must presume that the Legislature knew, when it amended § 17a in 1970, of the limited construction given the exceptional-circum-

---

[3] As stated in 2A Sands, Sutherland Statutory Construction (4th ed), § 49.09, p 400:

Where reenactment of a statute includes a contemporaneous and practical interpretation, the practical interpretation is accorded greater weight than it ordinarily receives, as it is regarded as presumptively the correct interpretation of the law. The rule has special force where the construction was made by the judiciary. Thus where the legislature adopts an expression which has received judicial interpretation, interpretation is prima facie evidence of legislative intent.

This rule is based upon the theory that the legislature is familiar with the contemporaneous interpretation of a statute, especially when made by an administrative body or executive officers charged with the duty of administering or enforcing that statute. Therefore it impliedly adopts the interpretation upon reenactment.

See also § 49.10, p 408 ("Likewise, legislative action by amendment . . . with respect to other parts of a law which have received a contemporaneous and practical construction may indicate approval of interpretations pertaining to the unchanged and unaffected parts of the law").

stances clause of that section by this Court in *Johnson* and its predecessors. Since the Legislature failed to make any substantive change in the language of the clause,[4] we must conclude that it intended to adopt the construction of the clause found in those cases. This is true even though we are unable to conclude that the Legislature actually reconsidered that language in light of our judicial interpretations when it amended and reënacted the provision, leaving the exceptional-circumstances clause substantially intact as interpreted. The purpose of the presumption, obviously, is to recognize precisely that fact.

Were we construing the exceptional-circumstances clause for the first time today, I think a persuasive case could clearly be made for the interpretation given it by Justice CAVANAGH. The language of the statute, after all, does appear to be open-ended. However, the consistent, limited construction of the exceptional-circumstances clause over the years by this Court, including that in *Johnson, supra,* along with the Legislature's reënactment of § 17a without any truly substantive changes in the language of the clause despite that limited construction, in my view requires us to conclude that the open-ended interpretation sought by Justice CAVANAGH is simply no longer available to this Court.[5]

---

[4] I do not consider the removal of the word "such" from the phrase "any such child" to be a substantive change. Undoubtedly, the removal reflects only a legislative desire to edit an old statute to a more readable form. Note that this change is not identified among the "substantive changes" in the "Historical Note" following the statutory language.

[5] In my view, Justice CAVANAGH's contention that there was no settled interpretation of the exceptional-circumstances clause in which the Legislature can be said to have acquiesced fails to address the Legislature's inaction in the face of the settled interpretation of § 17a by *this* Court at the very latest in *Johnson* and well before the adoption of the Age of Majority Act. More important, however, is the

CONCLUSION

I am well aware that today's decision by the majority to declare that these two provisions are in irreconcilable conflict, and that the earlier exceptional-circumstances clause of § 17a must therefore be seen as repealed by necessary implication by the later Age of Majority Act, is, as Justice CAVANAGH states, an "extraordinary step." I am not convinced, however, that this result is any more extraordinary than that which Justice CAVANAGH himself proposes.

It is not our function in this case to determine what the "best" rule regarding the payment of child support by a noncustodial divorced parent is or properly should be. Such a decision, as both the Chief Justice and Justice ARCHER point out, is the province of our state Legislature.[6] Nor should we in this case merely take our best guess as to what the Legislature intended to do when it enacted the Age of Majority Act, or as to what it might do in response to this decision. If that were true, the analysis would have to focus heavily, as that of the Chief Justice in some respects does, upon the action of the Legislature in amending in 1980 the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, specifically, § 7(1) of that act, to *delete* the exceptional-circumstances clause providing support for children between the age of eighteen and the age of majority, once the conflict

---

fact that the apparent confusion in the courts following the adoption of the Age of Majority Act has little bearing on the argument that the reënactment of § 17a in 1970 served to in effect incorporate this Court's contemporaneous interpretation of the clause in *Johnson* into the language of that provision.

[6] I join, however, in the sentiments of both the Chief Justice and Justice ARCHER in stating that this is a matter which the Legislature will surely want to reconsider in light of our ruling today.

between it and the Age of Majority Act was noticed.[7]

Rather, we are left in this case, in the absence of any specific indication of legislative intent with respect to the effect of the Age of Majority Act upon § 17a, with the task of determining that intent in light of established principles of statutory construction and interpretation. In this case, those principles require us to conclude that since we cannot reasonably reconcile these two provisions, the earlier exceptional-circumstances clause must be the one to fall.

ARCHER, J. (*concurring*). I fully join in the majority's holding and reasoning. I write separately, however, to emphasize that while the Court's holding is legally correct, the result, nevertheless, is harsh.

As my Brother CAVANAGH notes in his dissenting opinion, many jurisdictions have held that parents have a statutory or common-law duty to support their disabled adult children. Today, the Court holds that the Michigan Legislature, by amending the Age of Majority Act and several child support statutes, has chosen to follow a path leading in a different direction, as have many other states.

But this is not to say that a result correct in the eyes of the law also stands morally just before humanity. Parents who are capable of supporting their disabled adult children have a moral obligation to do so. With this no member of the Court disagrees.

By adopting our constitution, the people of our

---

[7] One could argue, it seems to me, that an even stronger argument could be made for repeal by implication of the exceptional-circumstances clause in § 17a by this change in the Child Custody Act, given its status as the "latest thinking" of the Legislature with respect to the support of children of divorced parents.

state have drawn the boundary line separating the three coequal branches of government. The branch empowered, in this particular case, to give a moral obligation the full force and effect of law is distinct from that responsible for adjudicating whether a legal duty has been breached. In the present case, as the majority intimates, the power to render into a legal duty a parent's moral obligation to support a disabled adult child rests exclusively with the Legislature.

I join with the majority and again urge the Legislature to reconsider the child support statute in light of the Court's opinion.

CAVANAGH, J. (*dissenting*). The majority of the Court has taken an extraordinary step and has declared the "exceptional circumstances" clause of MCL 552.17a; MSA 25.97(1) null and void. In spite of the clear language of the statute, which authorizes circuit courts to order the payment of postmajority child support when exceptional circumstances are present, the majority has held that circuit courts do not have the jurisdiction to award extended parental support for the disabled adult children of divorced parents. The result of this decision is that the financial responsibility of providing for the care of these disabled children will fall solely on the state and on custodial parents.

I cannot agree that the decision of the majority is compelled by either an analysis of the legislative history of the child support and custody statutes or by prior decisions of this Court. Not only does the decision violate principles of statutory construction and judicial restraint, it also cannot be justified in view of the public policy considerations that support giving meaning to the clear language of the statute. I would affirm the decision of the Court of Appeals and would hold that exceptional

circumstances are present when a child's mental or physical disabilities make it impossible for the child to be self-supporting.

FACTS AND PROCEEDINGS

When the Washtenaw Circuit Court granted a judgment of divorce to Michael and Mary Carlen Smith on August 30, 1973, the judgment provided that defendant Michael Smith was to pay for the support and maintenance of the couple's minor daughter, Aimee, "until the minor child shall attain the age of eighteen years, or until further order of the court . . . ." It was later discovered that Aimee was born with genetic abnormalities. Aimee suffers from acute mental and physical handicaps, and there is, unfortunately, little hope that her condition will improve.

Plaintiff Mary Carlen Smith filed a motion for an increase in support in August of 1984 and then amended the motion to include a request that child support be continued beyond Aimee's eighteenth birthday. When plaintiff filed the amended motion in October of 1984, Aimee was fifteen years old. The defendant, who became a practicing dentist after the divorce, agreed to the increase in child support, and on November 26, 1985, the trial court granted plaintiff's request for increased support.

After reviewing the pertinent statutes and appellate court decisions, however, the trial court also ruled that it was bound to follow certain decisions in which the Court of Appeals ruled that the Age of Majority Act[1] prevents any court from extending support payments beyond a child's eighteenth year unless the original divorce judgment

[1] MCL 722.51 et seq.; MSA 25.244(51) et seq., effective January 1, 1972.

contains a reservation or agreement for extended payments. The trial judge noted that this Court had not yet ruled on this important issue, and he added his personal view that "[t]he facts established in the present case are very heartrending and equities for support of the minor child of the parties are very compelling."

The Court of Appeals reversed the trial court's ruling that it lacked jurisdiction to extend defendant's child support obligations beyond Aimee's eighteenth birthday and remanded the case so that the circuit court could consider whether exceptional circumstances exist.[2] We granted leave[3] to consider whether a court in a divorce proceeding has the authority to order a parent to pay child support for a disabled adult child.

### ANALYSIS

This Court held in *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), that an award of support was properly granted under the exceptional-circumstances clause of § 17a in order to enable a child to attend college. The Court also ruled, however, that because the age of majority was twenty-one years, courts had no authority to award extended parental support for education expenses under the exceptional-circumstances clause once a child reached the age of twenty-one years.

The question for this Court to resolve, then, is whether the Legislature, in reducing the age of majority to eighteen years, intended to implicitly repeal the exceptional-circumstances clause of the child support statute and preclude circuit courts from ordering extended support for the disabled adult children of divorced parents. Primarily in

[2] 163 Mich App 423; 414 NW2d 906 (1987).
[3] 430 Mich 890 (1988).

reliance on this Court's decision in *Johnson,* the majority of the Court has concluded that the exceptional-circumstances clause is a legal nullity and that support payments may not be awarded beyond the age of majority.

I disagree. In order to preserve the validity of the *Johnson* decision, the majority has reached a result that requires a radical departure from established rules of statutory construction, a result that is not supported by the current language of the statute, the applicable court rule promulgated by this Court, or considerations of public policy. Furthermore, although a review of the case law of other jurisdictions reveals that courts have employed a variety of rationales in order to provide for support for disabled adult children, the present majority has held null and void a statutory provision that clearly provides for such support and has shifted the burden to the Legislature to amend the statute to add more precise language.

I

The resolution of this case turns on an interpretation of § 17a of the Michigan divorce statute, which provides, in part:

The court shall have jurisdiction in making such order or judgment relative to the minor children of such parties as authorized in this chapter to award custody of each child to 1 of the parties or a third person until each child has attained the age of 18 years and may require either parent to pay such allowance as may be deemed proper for the support of each child until each child shall have attained that age and may in case of exceptional circumstances, require payment of such allowance for any child after he attains that age. [MCL 552.17a; MSA 25.97(1).]

When construing the language of a statute, this Court's primary objective is to ascertain and give effect to the intent of the Legislature. *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988). When the language of a statutory provision is clear and unambiguous, no further interpretation is necessary or appropriate.[4] *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983). "Every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980).

Section 17a of the support statute outlines the extent of a circuit court's jurisdiction regarding its authority to award child support and plainly authorizes the court to require payment of child support "in case of exceptional circumstances" for *any* child after the child reaches the age of eighteen years. In spite of the clear language of the provision, the majority of the Court has concluded that the Legislature's use of the words "minor children" in the first sentence of § 17a and the use of the word "child" five more times in the provision is an indication that the Legislature intended the word "child" to apply exclusively to minor children.

The frequent use of the word "child" in a statute governing the authority of courts to award child support is not surprising and certainly should not be considered determinative of the significant issue presently before the Court. The exceptional-circumstances clause is an exception to

---

[4] Clear and unambiguous support statutes are not considered subject to modification by construction and, as is frequently stated, plain meaning is given to the terms used in these statutes. [3A Sands, Sutherland Statutory Construction (4th ed), § 68.08, p 411.]

the general rule that child support is for the benefit of minor children. The clause provides for an extension of the court's authority to order child support when certain exceptional facts are present and pertains to "any child" of the parties after the child attains the age of eighteen. In view of this clear language, I am unpersuaded by the majority's conclusion that each and every time the word "child" is used, it is a reference only to minor children.[5]

As the Court of Appeals stated, "[u]nless we attribute to the Legislature an intent to impliedly repeal the exceptional circumstances clause, we must assume that this provision, read in conjunction with the Age of Majority Act, contemplates the extension of support beyond the age of majority." 163 Mich App 427.

---

[5] The majority notes that when § 17a was enacted, the age of majority was twenty-one years, and according to the *Johnson* rationale, the exceptional-circumstances clause could be given effect during the three-year period prior to the time at which a child would reach the age of majority. *Ante*, pp 612-613. It is equally plausible to explain the *Johnson* decision by looking to the language of § 17a in effect when *Johnson* was decided, which provided:

> "The court shall have jurisdiction in making such order or decree relative to the minor children of such parties as authorized in this chapter to award custody of each such child to 1 of the parties or a third person until each such child has attained the age of 18 years and may require the husband to pay such allowance as may be deemed proper for the support of each such child until each such child shall have attained that age and may in its discretion in case of exceptional circumstances requiring the same, require payment of such allowance for any such child after he attains that age." [*Johnson, supra*, pp 423-424.]

At the time of the *Johnson* decision, then, the exceptional-circumstances clause of the statute authorized extended support "for any such child," specifically referring back to "the minor children" of the parties. The statute was amended by 1970 PA 182, so that the provision for extended support now refers to "any child" of the parties and is not limited to minor children. Thus, the majority's analysis of the language of the statute is not supported by a plain reading of the provision or a review of its history.

The Age of Majority Act provides, in part:

> Notwithstanding any other provision of law to
> the contrary, a person who is 18 years of age but
> less than 21 years of age when this act takes
> effect, and a person who attains 18 years of age
> thereafter, is deemed to be an adult of legal age
> for all purposes whatsoever and shall have the
> same duties, liabilities, responsibilities, rights and
> legal capacity as persons heretofore acquired at 21
> years of age. [MCL 722.52; MSA 25.244(52).]

I find nothing in this provision to indicate that the
Legislature intended to explicitly repeal the excep-
tional-circumstances clause of § 17a. Section 3 of
the act, MCL 722.53; MSA 25.244(53), lists a num-
ber of provisions which the act supersedes. Al-
though § 3 specifically states that the list is not all-
inclusive, it is significant that none of the affected
statutes listed concerns child support.

When construing a statute, courts "must read
the language of the statute in light of the general
purpose to be accomplished." *Wymer v Holmes,*
429 Mich 66, 76; 412 NW2d 213 (1987).[6] There is
simply no indication that the Legislature's purpose
in enacting the Age of Majority Act, which deals
with duties, liabilities, responsibilities, and rights
of individuals between the ages of eighteen and
twenty-one years, was to limit the extent of a
circuit court's jurisdiction to award child support
to a custodial parent. As this Court stated in *Price
v Price,* 395 Mich 6, 11, n 5; 232 NW2d 630 (1975),
the "Age of Majority Act does not purport to
deprive persons between the ages of 18 and 21 of
any rights theretofore enjoyed by them . . . ." The

---

[6] In *Paaso v Paaso,* 170 Mich App 628, 635; 428 NW2d 724 (1988),
the Court of Appeals commented that "[t]he self-evident purpose of
the child support statute is to ensure financial stability for the
children of divorced parents through their formative years."

act certainly does not purport to divest circuit courts of jurisdiction to order the payment of child support to custodial parents when exceptional circumstances are present.

There is also no indication that the Legislature intended to implicitly repeal the exceptional-circumstances clause. Repeals by implication are not favored. One commentator has stated:

> Repeal by implication is . . . disfavored and will be applied only where there is no rational basis for harmonizing two conflicting statutes and where the statutes are so inconsistent that concurrent operation is not possible. Implied repeal will only be effected if the statute or part of it is repugnant. Normally the courts will consider and attempt to harmonize all statutes on the same subject or with the same general purpose. Further, all sections of the support statute will be read together as a whole, and courts will avoid a construction that renders part of a statute meaningless.[7]

In *Attorney General ex rel Owen v Joyce,* 233 Mich 619, 621; 207 NW 863 (1926), this Court stated:

> When the intention of the legislature can be ascertained, it is the duty of the courts to give it force and effect.
>
> But,
>
> "The presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary."
>
> "Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction."
>
> "The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find

[7] 3A Sands, n 4 *supra,* § 68.08, p 412.

reasonable ground to hold the contrary." [Citations omitted.]

There is certainly another reasonable construction of § 17a beyond that offered by the majority, and we should be reluctant to conclude that the Legislature repealed the exceptional-circumstances clause by implication. Although it would repudiate the rationale of the decision in *Johnson,* we should interpret the statute so as to give effect to the exceptional-circumstances provision.

We were reluctant to conclude in *Price v Price* that the exceptional-circumstances clause had been repealed by implication. The Court of Appeals in *Price* reasoned that even if the Legislature had not intended to dictate that all support beyond age eighteen must cease regardless of exceptional circumstances, that was "the exact effect of the support statute when read in conjunction with the Age of Majority Act."[8] Instead of ruling directly on the issue whether the Age of Majority Act had any effect on a circuit court's jurisdiction to award postmajority support, this Court reversed the decision of the Court of Appeals due to the saving clause of the act.[9] Because the petition was pending when the act took effect, we concluded that it fell within the saving provision. Thus, the circuit court had the authority to require the defendant to pay support for his son's college education "until that son became 21 years old." 395 Mich 11.

Although the Court in *Price* did not directly resolve the issue presented here, it stated that the two provisions should be read so as to avoid rendering nugatory the exceptional-circumstances provision.

[8] *Price v Price,* 51 Mich App 656, 659; 215 NW2d 756 (1974).
[9] MCL 722.54; MSA 25.244(54).

While our disposition in this case rests upon the applicability of the saving provision, we are also inclined to the view that even after the effective date of the Age of Majority Act a court may enter an order or amend an order to provide for the college education of a person for whom a support order had been entered before he or she was 18. The Age of Majority Act does not purport to deprive persons between the ages of 18 and 21 of any rights theretofore enjoyed by them, but instead grants to persons of 18 the rights and legal capacities formerly withheld until they were 21. . . . Further, to interpret the two statutes otherwise would render nugatory the entire provision concerning "exceptional circumstances" in the support statute.

* * *

Special needs such as whether the individual may be handicapped mentally or physically or in need of other special training, or whether he or she is particularly gifted, are also relevant. [*Id.,* p 11, n 5.]

II

Upon the basis of the Legislature's actions subsequent to *Price,* we would not conclude that "the Legislature has acquiesced in the judicial construction given § 17a pursuant to the passage of the Age of Majority Act." *Ante,* p 633. Until the issuance of the opinion in this case, which is the first time this Court has considered § 17a's exceptional-circumstances clause as it applies to a disabled child over whom jurisdiction was obtained prior to the age of eighteen, this Court has not exhibited any intention to declare that the Legislature intended to implicitly overrule the clause when it adopted the Age of Majority Act.

In fact, the opposite is true, as the decision of

the majority directly contradicts MCR 3.209(B)(1)(b), which states that a support order must "provide for payment for a child until the child reaches the age of majority or graduates from high school, whichever is later, or, in exceptional circumstances, until further order of the court." The lead opinion reasons that because court rules cannot take precedence over statutory language except in matters involving judicial rules of practice and procedure, the court rule is also without legal effect.

It is simply not necessary to consider whether court rules may expand a court's jurisdiction or take precedence over statutory language,[10] since the language of § 17a, if given effect by this Court, is not in conflict with the court rule. The conflict perceived by the majority only arises when this Court declares that a portion of the statute is null and void. The existence of the court rule, however, is a further indication that the appellate courts of this state have not clearly resolved this issue, and that, therefore, the Legislature cannot be held to have acquiesced in what the appellate courts of this state have not finally resolved.

---

[10] The Court of Appeals in *Paaso v Paaso,* n 6 *supra,* pp 637-638, commented:

> We believe the court rule is consistent with the intent and purpose of the jurisdictional statute, which is to provide for the support of one's child through the formative years. . . . The Supreme Court has construed the gap between the eighteenth birthday and high school graduation as an "exceptional circumstance" within the meaning of the jurisdictional statute, as evidenced by its adoption of the court rule shortly after the Age of Majority Act and its dicta in footnote 5 of *Price.* It is possible that the Legislature concluded that a minority of high school students graduate after their eighteenth birthday and that provision for their support would therefore be exceptional. Such a reading of the intent of the jurisdictional statute comports with common sense, sound public policy, and the purpose of the statute, particularly in light of the Supreme Court's adoption of the court rule and comments in *Price.*

This conclusion is supported by recent decisions of the Court of Appeals, including its decision in this case, which indicate that the Court has not been entirely consistent regarding its treatment of this issue.[11] In view of the split of authority in the Court of Appeals, the language of MCR 3.209(B)(1)(b), and the fact that this Court has never addressed the precise issue presented here, there is no settled judicial construction of § 17a in which the Legislature could have acquiesced.

Moreover, the recent authority of the Court of Appeals illustrates the danger in relying on legislative silence when construing statutory provisions which appear to be inconsistent, especially when the inconsistency arises due to prior judicial interpretations of the provisions rather than from the plain language of the statutes themselves. As Justice Rutledge explained in his concurring opinion in *Cleveland v United States,* 329 US 14, 23-24; 67 S Ct 13; 91 L Ed 12 (1946):

> The danger of imputing to Congress, as a result of its failure to take positive or affirmative action through normal legislative processes, ideas entertained by the Court concerning Congress' will, is illustrated most dramatically perhaps by the vacil-

---

[11] In the recent case of *Dean v Dean,* 175 Mich App 714, 720; 438 NW2d 355 (1989), the Court held that circuit courts lack authority to continue child support past the age of eighteen merely because a child remains in school. Nevertheless, the Court cited with approval the decision of the Court of Appeals in this case and stated "that the 'exceptional circumstances' language of the statute refers to situations such as a child suffering from a severe handicap." Judge DOCTOROFF dissented from the majority's holding regarding postmajority support for children who are still in school and cited *Paaso v Paaso,* n 6 *supra,* in which the Court declared that the trial court had the power to order child support beyond a child's eighteenth birthday.

The Court of Appeals in *Norden v Norden,* 173 Mich App 826; 434 NW2d 256 (1988), ruled that circuit courts have jurisdiction to modify or continue postmajority child support even though the divorced parties previously entered a stipulation regarding postmajority support.

lating and contradictory courses pursued in the long line of decisions imputing to "the silence of Congress" varied effects in commerce clause cases. That danger may be and often is equally present in others. More often than not, the only safe assumption to make from Congress' inaction is simply that Congress does not intend to act at all. Cf. *United States v American Trucking Ass'ns,* 310 US 534, 550 [60 S Ct 1059; 84 L Ed 1345 (1940)]. At best the contrary view can be only an inference, altogether lacking in the normal evidences of legislative intent and often subject to varying views of that intent. In short, although recognizing that by silence Congress at times may be taken to acquiesce and thus approve, we should be very sure that, under all the circumstances of a given situation, it has done so before we so rule and thus at once relieve ourselves from and shift to it the burden of correcting what we have done wrongly.

Due to the clear language of § 17a, which grants circuit courts the jurisdiction to order postmajority child support when exceptional circumstances are present, and out of deference to established principles of statutory construction, I am unwilling to attribute to the Legislature an implied intent to repeal the exceptional-circumstances clause.

III

The decision of the majority not only runs counter to principles of statutory construction by the bold declaration that the exceptional-circumstances clause is a legal nullity, this decision also will create conflicts and inconsistencies in the child support and custody laws. It is significant that the Family Support Act,[12] which applies when a marriage is still legally intact but one spouse is not supporting the children of the marriage, also

---

[12] MCL 552.451 *et seq.*; MSA 25.222(1) *et seq.*

provides for the authority of the court to order the payment of postmajority child support. Section 2 of the act states that "[i]n unusual circumstances, the court may order support for the child after the child reaches 18 years of age and until he or she reaches 21 years of age, or until the further order of the court." MCL 552.452(1); MSA 25.222(2).

Consequently, due to today's holding by the majority, circuit courts have the authority, when "unusual circumstances" are present, to order a parent who has abandoned a disabled child to pay postmajority child support, but are without authority to compel divorced parents to support their disabled adult children. This is an incongruous result which I do not believe the Legislature intended.[13]

The age of majority was reduced from twenty-one to eighteen years of age, effective January 1, 1972. In spite of the fact that § 2 of the Family Support Act has been amended since the Age of Majority Act took effect,[14] the Legislature has not deleted the clause providing for the extension of child support in "unusual circumstances." This is an indication of the Legislature's intention to retain, not to repeal, provisions authorizing the courts to require the payment of postmajority support in certain circumstances.

It is undoubtedly extremely difficult if not impossible for those who are severely mentally or physically disabled to support themselves. Paren-

---

[13] I do not suggest that the Family Support Act applies when the parents of a child are divorced. That argument was rejected in *Sumerix v Sumerix*, 106 Mich App 7, 9; 307 NW2d 727 (1981), in which the Court stated that the act "appears to be applicable only where the marriage is still legally intact." Neither my participation in the *Sumerix* decision nor the inapplicability of the act to the facts before us today, however, will resolve the incongruity between the act and § 17a that is created by the decision of the majority in this case.

[14] See 1983 PA 196 and 1985 PA 212.

tal support can be required for disabled adult children under Michigan's poor law,[15] MCL 401.1 *et seq.*; MSA 16.121 *et seq.,* which defines a "poor person" as one "who does not have property, exempt or otherwise, and who is unable, because of physical or mental disability or age, to earn a livelihood . . . ."[16] Section 5[17] provides for the priority of liability of the relatives of the poor person. The obligation to support falls first on the person's spouse, if that person has a spouse and the spouse has the financial ability, and then on the person's parents. Thus, the poor law contains a distinct category for those who, without regard to age, are unable to provide for their own support. This provision is analogous to the exceptional-circumstances clause of § 17a and the unusual-circumstances clause of the Family Support Act.

It may be burdensome to make the parents of a disabled child financially responsible for the child's support, especially since the responsibility might extend for the duration of the child's life. As one commentator has observed, however, "the child must be supported by someone, and the parent, who—however blamelessly—brought the child into the world, would appear to bear a greater responsibility for his maintenance than does anyone else, including the state or deficit-ridden federal government."[18] As Chief Justice COOLEY commented in *Stilson v Gibbs,* 53 Mich 280, 282; 18 NW 815 (1884), "there is always a contingent liability for

[15] See Mandelker, *Family responsibility under the American poor laws,* 54 Mich L R 497, 516-517 (1956); Washburn, *Post-majority support: Oh dad, poor dad,* 44 Temp L Q 319, 340-349 (1971).

[16] MCL 401.1(a); MSA 16.121(a).

[17] MCL 401.5; MSA 16.125.

[18] Moore, *Parents' support obligations to their adult children,* 19 Akron L R 183, 186 (1985). Professor Moore notes, *supra,* p 183, that "most jurisdictions, through statute or court decision, have made parents responsible for the maintenance of their physically or mentally incapacitated adult children . . . ."

the support of children who are over age, in case they become a public charge."

IV

As the majority states, no final Michigan appellate decision has sustained an award of postmajority child support. The majority fails to acknowledge, however, that this Court has never directly considered or resolved the question whether mental or physical disabilities may constitute exceptional circumstances under § 17a.[19] In addition, it is significant that the majority's review of the treatment of this issue by other jurisdictions attempts to merely categorize those cases in which postmajority support has been found permissible, but points to no case in which the final appellate court of any jurisdiction has stricken an exceptional-circumstances clause and denied support to adult handicapped children.

[19] That question was also not presented in cases cited by the majority in which I participated while a member of the Court of Appeals. See *Sumerix,* n 13 *supra, McNames v McNames,* 93 Mich App 477; 286 NW2d 892 (1979), and *Boyd v Boyd,* 116 Mich App 774; 323 NW2d 553 (1982).

The issue before the Court of Appeals in *Sumerix, McNames,* and *Boyd* concerned whether courts could order that child support continue for children who are eighteen years of age but have not yet graduated from high school. The propriety of awarding postmajority child support for education expenses has been an issue of considerable interest recently in other jurisdictions. See Smith, *Educational support obligations of noncustodial parents,* 36 Rutgers L R 588 (1984); Horan, *Postminority support for college education—A legally enforceable obligation in divorce proceedings?,* 20 Fam L Q 589 (1987); Crawford, *Graduate school support: One last dip into the proverbial parental pocketbook,* 56 Ind L J 541 (1981); 99 ALR3d 322. See also the recent decision of the Alabama Supreme Court in *Bayliss v Bayliss,* 550 So 2d 986 (Ala, 1989); 1989 Ala LEXIS 371 (trial courts have jurisdiction to require parents to provide postminority support for college education to children of a marriage that has been terminated by divorce), and of the Supreme Court of South Carolina in *Dunnavant v Dunnavant,* 278 SC 445; 298 SE2d 442 (1982) (the need for an education is an exceptional circumstance). The resolution of this important question in this jurisdiction, however, must await another case.

The majority divides the jurisdictions in which postmajority support is extended into two categories, those in which the applicable statute contains a specific authorization for extended support for handicapped children and those in which the statute does not limit support to minor children. The majority states that the Michigan statute does not fit within either category, a position it claims to be shared by a majority of jurisdictions. The majority suggests that this Court is restrained by the Michigan Constitution from reaching a contrary result, and concludes by urging the Legislature to reconsider the child support laws to expressly provide for postmajority child support.

First, even though the Michigan statute does not expressly provide for postmajority support for disabled or handicapped children, it does contain an express provision for extended support in the exceptional-circumstances clause. Second, that clause is not limited by age and confers jurisdiction upon circuit courts to order extended support for *any* child after the child attains the age of majority. Although a more precise statutory provision would be desirable, § 17a as presently drafted clearly provides for extended support beyond a child's majority when exceptional circumstances are present. The statute does not define what circumstances may be considered exceptional, but it is certainly within the authority of this Court to determine whether mental or physical disabilities that render a child incapable of self-support may be considered exceptional circumstances and give rise to an extended duty of parental support.

In short, the statute already provides the authority for extended support that the majority of the Court now urges the Legislature to restore. The fact remains that the majority has employed a

dubious analysis of legislative intent to reach a harsh result that is clearly contrary to express statutory language and considerations of public policy. It then attempts to reduce its responsibility for this result by stating that the result reflects the will of the Legislature and that to hold otherwise would be a usurpation of legislative power. I find this analysis wholly unpersuasive. Notwithstanding the majority's attempt to persuade to the contrary, it is not the language of the statute or the intent of the Legislature that leads to this harsh result, but this Court's refusal to consider the validity of the decision in *Johnson.*

Furthermore, I take issue with the majority's statement that Michigan remains in the majority of states that do not provide postmajority child support for disabled children absent an express statutory provision or a statute that does not refer to "minor children." The Alabama Supreme Court in *Ex parte Brewington,* 445 So 2d 294 (Ala, 1983), rejected prior decisions in that jurisdiction which held that absent a statute or agreement, no common-law authority existed to impose upon a noncustodial parent the obligation to support an adult child. The court stated that "the majority trend is to recognize an exception to this rule when the adult child is so mentally and/or physically disabled as to be unable to support himself." *Id.,* p 296.

The *Brewington* court repudiated a prior decision which held that the term "children" as used in the Alabama child support statute was meant to apply only to *minor* children. The court explained that the statute did not express such a limitation, and it found such a narrow interpretation unacceptable.

[W]e believe the legislature intended that support be provided for *dependent* children, regardless of whether that dependency results from minority, or from physical and/or mental disabilities that continue to render them incapable of self-support beyond minority. [*Id.*]

The exceptional-circumstances clause in the Michigan statute also does not refer to *minor* children, but expressly provides for support for *any* child beyond the age of eighteen upon a showing of exceptional circumstances. As did the court in *Brewington,* I find unacceptable the present majority's narrow interpretation of § 17a.

The District of Columbia Court of Appeals also recently held that the common law imposes a duty on the part of a parent to support a child after the child reaches majority if the child is physically or mentally disabled. *Nelson v Nelson,* 548 A2d 109 (DC App, 1988). In reaching that decision, the court commented that "it is clear that the great majority of jurisdictions have accepted the existence of a continuing duty on the part of parents to support disabled children beyond the age of majority, if not by virtue of statute enacted by the legislature, then by rule of law adopted by the courts." *Id.,* p 114. The court referred to a trend among courts "to recognize the parental duty of support for the adult disabled child as a *natural extension* of the common-law obligation of support for minor children." *Id.,* p 116.[20]

The Supreme Court of Colorado has employed the concept of delayed emancipation. In *Koltay v Koltay,* 667 P2d 1374, 1376 (Colo, 1983), the court

[20] The Supreme Court of Ohio also recognizes a common-law duty imposed on parents to support their disabled adult children who are unable to support themselves. *Castle v Castle,* 15 Ohio St 3d 279; 473 NE2d 803 (1984). See *Nelson, supra,* 115, n 8, for a list of cases the *Nelson* court states "demonstrates overwhelming support for the conclusion that a parental support obligation exists with respect to adult offspring who are physically or mentally disabled."

explained that the attainment of the age of twenty-one only creates a presumption of emancipation.

> If, by reason of some serious physical or mental disability, the child is incapable of self-support, the child is not "emancipated." A different interpretation would be wholly inconsistent with the independence that the word "emancipation" connotes. If a child is physically or mentally incapable of self-support when he attains the age of majority, emancipation does not occur, and the duty of parental support continues for the duration of the child's disability.

The inescapable conclusion to be drawn from a review of the case law of other jurisdictions is that when the question has been presented, the vast majority of jurisdictions have concluded that noncustodial parents may be ordered to support their disabled children beyond their minority. Although the result has been reached in a variety of ways, either through statutory interpretation or by an extension of the common law, courts have almost uniformly held that postmajority support for physically or mentally handicapped children is both permissible and desirable. The majority does not point to a single case, and my research reveals no case, in which a final appellate court has stricken a clause that provides for such support. The fact remains that the majority of this Court has reached its conclusion in spite of language in the Michigan statute that permits postmajority support, the weight of authority from other jurisdictions that suggests the desirability of that result, and public policy considerations which compel a determination that extended support for disabled children is permissible in this jurisdiction.

CONCLUSION

Unlike the lead opinion suggests, this is not a case in which there is "voluminous" case law supporting the decision of the majority and merely a footnote that infers to the contrary. There is, after all, the plain language of the statute and a court rule promulgated by this Court. In addition, established principles of statutory construction and considerations of public policy, considerations which have led a majority of jurisdictions to hold to the contrary, weigh against the decision of the majority.

I would hold that because the Legislature reduced the age of majority to eighteen years but retained the exceptional-circumstances clause in the support statute, it had no intention to implicitly repeal the provision for extended parental support. It is the rationale of the decision in *Johnson,* not the statutory provision itself, which is no longer valid.

If the support statute is given effect as it is written, as long as a court obtains jurisdiction over a child when the child is a minor, the court has the authority to award postmajority support upon a showing of exceptional circumstances until those circumstances no longer exist. I would also hold that mental or physical disabilities may constitute exceptional circumstances under § 17a and would remand this case to the circuit court[21] to determine whether exceptional circumstances are present.

---

[21] As the Court of Appeals noted, 163 Mich App 426, n 1, a showing of exceptional circumstances must be made as the child approaches the age of majority. I agree, however, with the Court's conclusion that "[i]n view of the court's finding . . . that Aimee showed little hope of improvement and in view of Aimee's relative nearness to the age of majority at the time of the evidentiary hearing, . . . the proceedings below were sufficiently contemporaneous with Aimee's prospective attainment of the age of majority to allow the court to decide whether exceptional circumstances were present."

BRICKLEY, J., concurred with CAVANAGH, J.

LEVIN, J. (*dissenting*). I would hold that, although the Legislature, in the Age of Majority Act, reduced the age of majority to eighteen,[1] the circuit court continues to be empowered, under § 17a of the divorce statute, in "exceptional circumstances" to require child support until the child attains twenty-one.[2] I agree with the majority that the case has not been made for a construction of the statutes that would empower the circuit court to require support beyond twenty-one.

In 1939, the Legislature added § 17a and thereby empowered the circuit court to require a husband[3] to pay for the support of "minor children" until they attain seventeen and "in its discretion in case of exceptional circumstances" to require "payment of such allowance for any such child after he attains that age."[4]

This Court construed § 17a as empowering the circuit court in exceptional circumstances "to grant support until arrival at majority—majority being 21 years old." *Johnson v Johnson,* 346 Mich 418, 426; 78 NW2d 216 (1956); *Titus v Titus,* 311 Mich 434, 437; 18 NW2d 883 (1945).

In 1971, the Legislature reduced the age of majority from twenty-one to eighteen, and provided that a person who had attained or thereafter attains eighteen would be deemed to be an adult of legal age "for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights and legal capacity as persons heretofore

---

[1] 1971 PA 79, adding MCL 722.52; MSA 25.244(52).

[2] 1939 PA 255, adding § 17a to the Revised Statutes 1846, ch 84, as amended, concerning divorce. The age was changed from seventeen to eighteen by 1970 PA 543. MCL 552.17a; MSA 25.97(1).

[3] Later changed to "either parent" by 1970 PA 182.

[4] See n 2.

acquired at 21 years of age."[5] The Age of Majority Act provides that it "supersedes all provisions of law prescribing duties, liabilities, responsibilities, rights and legal capacity of persons 18 years of age through 20 years of age different from persons 21 years of age including but not limited to the following enumerated public acts."[6] Section 17a was not so enumerated.

The majority concludes that since this Court had construed § 17a as empowering the circuit court to award child support in exceptional circumstances only until a "minor child" attained the age of "majority," when the Legislature reduced the age of majority to eighteen the power of the circuit court to award child support beyond eighteen perforce came to an end.

Section 17a provides that "payment of such allowance for any such child after he attains that age,"[7] eighteen, may be awarded in exceptional circumstances, thereby clearly indicating that the 1939 Legislature intended that a "minor child" is nevertheless a "child" for the purposes of the exceptional-circumstances clause beyond eighteen until twenty-one when, at the time § 17a was enacted, he would cease to be a "minor child."

It is not suggested that the 1939 Legislature, when enacting § 17a, contemplated the possible subsequent enactment of legislation raising or lowering the age of majority and intended that whatever the age of majority might be from time to time would be the age beyond which child support could not be awarded. In *Johnson* and *Titus,* this Court concluded that the 1939 Legislature, in enacting in § 17a that child support might be contin-

---

[5] 1971 PA 79, adding MCL 722.52; MSA 25.244(52).

[6] MCL 722.53; MSA 255.244(53). The enumeration includes sections of "public acts" as well as "public acts."

[7] See n 2 and accompanying text.

ued in exceptional circumstances until arrival at majority, intended that support might in such a case be continued until the age, twenty-one, then the age of majority. By construction, there was thus read into § 17a the concept, expressed in *Johnson* and *Titus,* that child support could be awarded in exceptional circumstances beyond eighteen until, but not beyond, twenty-one.

It is contended that, in reducing the age of majority from twenty-one to eighteen, the 1971 Legislature repealed by implication the authority conferred in § 17a to award child support in exceptional circumstances until twenty-one. Clearly, child support is not a "dut[y], liabilit[y], responsibilit[y]," or "legal capacity" of the child within the meaning of the Age of Majority Act.[8] While child support might be a "right" of the child, the Age of Majority Act provides generally that rights theretofore acquired at twenty-one henceforth would be acquired at eighteen.

The language employed does not appear to reduce the rights of a person who is eighteen but who has not yet reached twenty-one. The Age of Majority Act does not appear to concern, or have as its purpose reducing, rights acquired at or before birth, but rather accelerating the age of acquisition of rights theretofore not acquired until twenty-one. Nor has our attention been directed to anything in the history of the enactment of the Age of Majority Act that justifies the majority's conclusion that the 1971 Legislature intended that the exceptional-circumstances clause of § 17a—not concerning a right theretofore acquired at twenty-one nor enumerated in the list of acts "superseded"—be repealed by implication.

There are two other straws in the wind. The

---

[8] See n 5 and accompanying text.

Child Custody Act[9] was amended in 1980[10] by deleting the "exceptional-circumstances" clause from § 7(1) of the act.[11] The Family Support Act[12] continues to provide, however, that in "unusual circumstances, the court may order support for the child after the child reaches 18 years of age and until he or she reaches 21 years of age, or until the further order of the court."[13] The failure to amend the Family Support Act in the manner in which the Child Custody Act was amended dissuades me from deducing legislative intent, operative in the construction of § 17a, on the basis of the amendment of the Child Support Act.

[9] MCL 722.21 et seq.; MSA 25.312(1) et seq.

[10] 1980 PA 161.

[11] MCL 722.27(1); MSA 25.312(7)(1). See ns 10 and 11 of the lead opinion, ante, pp 614-615.

[12] MCL 552.451 et seq.; MSA 25.222(1) et seq.

[13] MCL 552.452(1); MSA 25.222(2). The substance of the quoted words were added by 1970 PA 153.